# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA K. CURRY<br>*Plaintiff* | : | NO. 321-CV-00221 (SRU) |
| v. | : | |
| PALMETTO SURETY CORP. et al.<br>*Defendants* | :<br>: | APRIL 16, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The Defendants in the above-captioned matter, Palmetto Surety Corporation ("Palmetto,") 24/7 Bail Bonds, LLC ("24/7") , William J. Sobota ("Sobota") and Jerry Cao ("Cao") (collectively "Defendants") hereby submit their Memorandum of Law in Support of their Motion to Dismiss the Plaintiff Anna K. Curry's ("Curry") complaint in its entirety pursuant to F. Rule Civ. P. 12(b)(1), on the grounds that this Court lacks subject matter jurisdiction because Curry has no standing to sue; specifically, Curry lacks standing because she fails to plead jurisdictional facts alleging that Defendants' conduct caused her "injury in fact," a necessary requirement for standing.

In support of their argument, Defendants have included in this memorandum of law evidence outside the pleadings, as is permissible in a 12(b) (1) motion challenging the plaintiff's standing and this Court's jurisdiction. See *Carter v. HealthPort Technologies, LLC*, 822 F.3d, 47, 57 (2d Cir. 2016) and *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

### I.   THE ALLEGATIONS IN THE COMPLAINT

Curry brought the instant action on or about February 24, 2021, based upon diversity

jurisdiction. In her Complaint, she makes the following general allegations: that on or about January 9, Palmetto, a South Carolina corporation in the business of providing bail surety bonds, through its Connecticut agent, 24/7, also in the business of providing bail surety bonds, posted a bond in the sum of $6,000,000.00 to secure the release of Fotis Dulos ("Dulos"), the criminal defendant in the matter before the Connecticut Superior Court, *State v. Dulos*, Docket No. CR-20-0241180-T. Compl. ¶¶ 2-3, 10. Curry further alleges that the bond commanded a premium of $420,150.00, with a premium deposit of $148,000.00. On that same date, Curry paid Sobota, as principal of 24/7, $147,000.00 towards the deposit personally by means of two cashier's checks totaling that amount. Another bail bondsman, Cao, acknowledged receipt of the premium deposit. Compl. ¶¶ 4-5, 11-12. Curry alleges that on January 29, 2020, Palmetto moved to revoke the bond on the grounds that it had exceeded its limitations of risk set by Conn. Gen. Stat. § 38a-73, and that because Palmetto acknowledged that it was in violation of said statute, the bond was void *ab initio*, and therefore the Defendants provided no benefit to Curry. Compl. ¶¶ 13-15.[1] Curry finally alleges that she demanded the return of the premium deposit, and that the Defendants have improperly retained it. Compl. ¶¶ 14-16. Count One of the Complaint sounds in Unjust Enrichment; Count Two sounds in Conversion; Count Three sounds in Civil Theft pursuant to Conn. Gen. Stat. § 42-564.

## II. ADDITIONAL FACTS OUTSIDE THE PLEADINGS

### A. The role of 24/7 in the Dulos Bond

---

[1] Conn. Gen. Stat. § 38-73(a), the relevant section of the statute, provides: "No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten percent of its paid-up capital and surplus; but, in determining the amount of such risk, no portion thereof that has been reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included."

2

Sobota is the principal of 24/7 and is a bail bondsman by occupation, licensed in the state of Connecticut by the Department of Insurance. In that capacity, he works with bail agents such as Cao, who are independent contractors. Bail agents such as Cao bond out criminal defendants/arrestees such as Dulos under insurance coverage. Said insurance coverage is the bail money itself, which is provided by 24/7, who underwrites the policy. The bail agent in turn pays 24/7 a premium for the policy, paid by the criminal defendant arrestee such as Dulos, or its agent/indemnitor. Affidavit of William J. Sobota dated April 6, 2021 ¶¶ 2-3, annexed hereto as **Exhibit A.** 24/7 acts as an underwriter for Palmetto, which is licensed to write surety bonds in Connecticut by the Department of Insurance. Palmetto is the ultimate guarantor of the policy. The monies paid by the criminal defendant/arrestee being bonded out are divided between the bail agent, in this instance Cao, 24/7 and Palmetto. Ex. A, Sobota Aff. ¶ 4.

24/7's responsibilities as bail bondsman include: 1) underwriting the bond by gathering the relevant information from the criminal defendant/arrestee that will assist Palmetto in determining the latter's financial condition; 2) collecting the premium for the bail bond from the criminal defendant/arrestee; 3) once the bond is written, securing the criminal defendant/arrestee's release on bond by filing with the court Palmetto's power of attorney and a Criminal Appearance Bond (Connecticut Superior Court form JD-CR-4); and 4) ensuring that the criminal defendant/arrestee appears at scheduled court dates as ordered by the judge in the criminal case. Ex. A, Sobota Aff.¶ 5.

The bail agent Jerry Cao, the bail bondsman 24/7 and Palmetto enacted these roles with respect to the release of Dulos on the bond in the matter of *State of*

*Connecticut v. Fotis Dulos*, Docket No. FST-CR20-0241180 ("the Dulos Bond"). Ex. A, Sobota Aff. ¶ 6.

On or about January 7, 2020, Sobota was approached by his agent Cao, for assistance in underwriting a bond in the sum of $6,000,000.00 for Dulos, then under indictment for violations of Conn. Gen. Stat. §§ 53a-54a (murder), 53a-54c (murder-commission of a felony) and 53a-92 (kidnapping, 1st degree). Cao had in turn initially been approached by Dulos' attorneys. Sobota alerted Palmetto that 24/7 would be requesting a large bond in that sum, and set about reviewing information from Dulos concerning his financial condition to support such a bond. The information was forwarded from Dulos' attorneys to Curry; Curry submitted the requested information to Cao and 24/7. Ex. A, Sobota Aff. ¶¶ 7-8.

On January 9, 2020, Dulos executed an application for surety bond to Palmetto; a promissory note in the amount of $3,000,000.00 to Palmetto; and Palmetto's Financial Statement and Indemnity Agreement, which was signed by Dulos and Curry.[2] The Indemnity Agreement, *inter alia*, obligated Dulos, in return for Palmetto putting up the bond, to appear in court if so ordered. Ex. A, Sobota Aff. ¶ 9.

Also on January 9, 2020, Dulos and Curry paid 24/7 the initial premium payment on the Dulos Bond (Curry paid by checks in the sum of $147,000.00, and Dulos by check for $1,000.00). Dulos and Curry additionally executed an Unpaid Premium Agreement on January 9, 2020, for the outstanding balance of $278,150.00, to be paid in fifteen monthly installments. Ex. A, Sobota Aff. ¶ 10.[3] On or about January 11, 2020, Palmetto wrote the Dulos Bond. Sobota and his agent Cao appeared in court with

---

[2] *See also* Application for Appearance Bond dated 1/9/2020, annexed hereto as **Exhibit B**; Financial Statement and Indemnity Agreement dated 1/9/2020, annexed hereto as **Exhibit C**.
[3] *See also* Unpaid Premium Agreement dated 1/9/2020, annexed hereto as **Exhibit D**.

4

Palmetto's power of attorney, filled out the appropriate paperwork, and Dulos was released on bail. The Dulos Bond had been collateralized with the equity in six parcels of real property purportedly owned by Dulos. Sobota personally filed the mortgages to Palmetto at the respective Land Records offices. Ex. A, Sobota Aff. ¶¶ 11-12.

On or about January 28, 2020, Palmetto moved to revoke the Dulos Bond due to the fact that imperfections in the collateral placed Palmetto in violation of Connecticut law, in that the Dulos Bond exceeded Palmetto's statutory limitation of risk.[4] On January 27, 2020, the court scheduled a hearing for review of the Dulos Bond in Dulos' criminal case for the next day, January 28, 2020, and Dulos was ordered to appear. On the 28th, when Sobota was advised that Dulos had failed to appear in court for the hearing, Sobota went to his residence to determine the reason and retrieve him if necessary. When he arrived, the police were attempting to resuscitate Dulos, who had attempted suicide. Palmetto's motion to revoke the Dulos Bond was never adjudicated. On or about January 30, 2020, Dulos died as a consequence of his self-inflicted injuries.[5] Ex. A, Sobota Aff. ¶¶ 13-15.

Sometime subsequently Curry contacted Sobota seeking a refund of the premium. Sobota advised Curry that the Dulos bond had never been revoked, and was still therefore valid, and advised her further to check with the clerk of the court for confirmation. Curry never contacted Sobota again, until this lawsuit. Ex. A, Sobota Aff. ¶16.

---

[4] See also Motion to Revoke Bond dated 1/28/2020, annexed hereto as **Exhibit E**.
[5] Pursuant to Federal Rules of Evidence 201, the Defendants respectfully request that this Court take judicial notice that Fotis Dulos was reported in the media to have died as a consequence of his suicide attempt on January 30, 2020, if not for the truth of the matter, then simply to note that his death was reported in the news. See Hartford Courant, "Dulos Dead," 1/31/2020, retrieved from Westlaw database, 2020 WLNR 3038780, annexed hereto as **Exhibit G**.

24/7's responsibilities arising from the Dulos Bond included underwriting the bond, facilitating the application process, collecting the premium, securing Dulos' release and ensuring that he appeared in court when it was so ordered. 24/7, Sobota and 24/7's agents fulfilled all of their responsibilities, duties and obligations with respect to the Dulos Bond. The premium on such a bond, including that paid by Curry, is like the premium on any insurance policy; it is not refundable. Because 24/7 performed all of its obligations under the bond, no circumstance arose pertaining to the Dulos Bond that justified a refund. Ex. A, Sobota Aff. ¶¶17-18.

### B. The role of Palmetto in the Dulos Bond

Palmetto is domiciled in the state of South Carolina, and at all relevant times was duly licensed by the Department of Insurance in the State of Connecticut to write surety bonds in said jurisdiction. Affidavit of Scott Willis dated April 12, 2021, ¶ 2, annexed hereto as **Exhibit H**. On or about January 8, 2020, Palmetto received a large bond request from its licensed agent in the state of Connecticut, 24/7. The bond would be in the amount of $6,000,000.00, and the criminal defendant was Dulos, charged with murder and kidnapping. Ex. H, Willis Aff. ¶¶ 3-5.

The application for the bond went through a process where collateral had to be secured from Dulos in order for Palmetto to be able to write the bond. The guidelines for underwriting were set forth between 24/7, Dulos, his attorneys and Dulos' agent/indemnitor, Curry. Palmetto was advised by 24/7 that Dulos was collateralizing the bond with equity from the latter's real estate holdings, consisting of six parcels of real property in Connecticut. 24/7 performed due diligence concerning Dulos' collateral,

based on spreadsheets put together by Dulos and his attorneys setting forth the properties' equity and debt. Ex. H, Willis Aff. ¶¶ 6-7.

Palmetto, through 24/7, made inquiry of Dulos and his attorneys concerning evidence of foreclosure on certain of the properties found by Palmetto on the real estate website Zillow, and Palmetto was assured that the matters had been taken care of and would not impair the collateral. Based upon the representations made by Dulos, Curry and Dulos' attorneys, conveyed to Palmetto through its agent 24/7, Palmetto believed that Dulos was providing sufficient collateral via his equity and real estate to cover any offset in Palmetto's own capital and reserves, thereby securing the bond. Ex. H, Willis Aff. ¶¶ 8-9.

The bond was written and issued on or about January 11, 2020. On that date, 24/7 posted the bond and removed Dulos from prison. That evening, 24/7's principal William Sobota ("Sobota") and Dulos, now out on bail, called Scott Willis, Palmetto's CEO ("Willis") from Sobota's car; Dulos personally assured Willis that, regarding the foreclosures on several of the properties used to collateralize the bond, there were no issues with his equity. Ex. H, Willis Aff. ¶ 10.

Later in January, a representative of the South Carolina Department of Insurance was contacted by the Connecticut Department of Insurance, and advised that Palmetto had written a bond in excess of its capital and reserves, in violation of Connecticut law. The South Carolina Insurance Department passed this information on to Palmetto. Ex. H, Willis Aff. ¶ 11.

Upon learning of this, Palmetto performed an audit of Dulos' collateral on the bond, and the surety's risk analyst discovered imperfections in the collateral provided as

security bond posted on behalf of Dulos. Said imperfections in Dulos' collateral included two properties subject to ongoing foreclosure actions in the Connecticut Superior Court, one of which appeared to be overvalued significantly. The two foreclosure matters were captioned as *Savings Bank of Danbury v. Fore Group, Inc.*, FST-CV19-6044836-S and *Mark H. Dean as Trustee of the CT RE 2019 Trust v. Fotis Dulos*, HHD-CV19-611846-S. Said imperfections in the collateral provided by Dulos to Palmetto were not represented to Palmetto and/or its agent 24/7 by Dulos and/or his indemnitor Curry during the underwriting process, pursuant to Dulos' application for the bond. Ex. H, Willis Aff. ¶¶ 12-14.

On or about January 28, 2020, Willis, Palmetto's CEO, spoke to Sobota of 24/7 who advised that a hearing on the bond had been called for that day by the court in the criminal proceeding against Dulos. On or about January 28, 2020, because Dulos and/or his indemnitor Curry failed to identify said imperfections in the bond, Palmetto filed a motion to revoke the bond in the Connecticut criminal matter on the grounds that it exceeded Palmetto's limitation of risk in violation of Conn. Gen. Stat. § 38a-73. Sobota subsequently advised Willis that when Dulos had failed to appear at the bond hearing on January 28, 2020, Sobota proceeded to Dulos' residence to determine why Dulos had failed to appear and retrieve him if necessary; there he found police present, and that Dulos had attempted suicide and was rendered comatose. The hearing on the bond did not transpire on that day. Ex. H, Willis Aff. ¶¶ 15-17.

The next day, January 29, 2020, Palmetto appeared through Connecticut

counsel at a hearing called in the criminal matter. Palmetto's motion to revoke was not heard on that date.[6] On January 30, 2020, Palmetto through counsel withdrew its motion to revoke the bond.[7] The motion was never adjudicated. Ex. H, Willis Aff. ¶¶ 18-19.

Palmetto's noncompliance with Conn. Gen. Stat. § 38a-73(a) did not negatively affect its agent 24/7's obligations with respect to any criminal defendant out on bond, including Dulos. Ex. H, Willis Aff. ¶ 20.

### C. The hearing in *State v. Dulos* on January 29, 2020

On January 29, 2020, the day after Dulos had attempted suicide and the day after Palmetto had filed its motion to revoke the bond, a hearing was held. Transcript of Hearing dated 1/29/2020 in *State v. Dulos*, *passim*, annexed hereto as **Exhibit I**. The State's Attorney prosecuting Dulos, in addressing the Court, indicated that the motion was to be marked off. *Id.* The State's Attorney then requested of the Court that Dulos (then in hospital in New York)[8] be ordered re-arrested and that the bond be increased nominally. *Id* at 1. The proceeding concluded with the Court ordering that Dulos be re-arrested, and ruling that "I'm going to raise the bond by $500,000.00 on the murder file [.]" Ex. I, Tr. at 4. Therefore, at the time the media reported that Dulos died on the next day, January 30, 2020, the bond underwritten by 24/7 and backed by Palmetto was still in effect, and was recognized and acknowledged as such by both the Court and the State's Attorney.

### D. The State of Connecticut Department of Insurance response

---

[6] *See also* Ex. I, Transcript of Hearing dated 1/29/2020.
[7] *See also* Withdrawal of Motion to Revoke Bond dated January 30, 2020, annexed hereto as **Exhibit F**.
[8] Defense counsel noted on the record that Dulos' medical condition was "dire." Ex I. Tr. at 2. Dulos' presence in hospital in New York is referenced by defense counsel and the State's Attorney. *Id.* at 3.

9

By letter dated June 26, 2020, nearly five months after Dulos' death, the Insurance Department of the State of Connecticut advised Palmetto that because it was not in compliance with Conn. Gen. Stat. § 38a-73(a), the Department was restricting Palmetto's license by revoking its authority to write new business in the State until such time as it could prove that it could operate in compliance with Connecticut law, at which time it could successfully reapply. The Department of Insurance further allowed Palmetto to "continue ....to service its existing bonds outstanding" whilst the restriction was in effect.[9] From this it can be inferred that the Department of Insurance did not view Palmetto's statutory noncompliance as injurious to its then-current arrestees/criminal defendants at liberty based on Palmetto's surety bonds.

### III. LAW AND ARGUMENT

### A. STANDARD OF REVIEW

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must allege facts that affirmatively and plausibly suggest that he or she has standing to sue. *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2009). "Although lack of Article III standing and subject matter jurisdiction are distinct concepts..., Article III standing remains a limitation on the authority of a federal court to exercise jurisdiction." *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2014). "[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including that a plaintiff has Article III standing, before deciding a case on the merits." *Id.* at 85.

"[W]here a complaint is dismissed for lack of Article III standing...[s]uch a dismissal

---
[9] *See* Letter from State of Connecticut Department of Insurance to Palmetto dated June 26, 2020, annexed hereto as **Exhibit J**.

10

Is one for lack of subject matter jurisdiction; and without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Technologies, LLC*, 822 F.3d, 47, 54-55 (2d Cir. 2016), citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 732-733 (2008); *Lujan v. Defenders of Wildlife*, 504 U,S, 555, 559-60 (1992); and *Amidax Trading Group v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011).

"Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (Citation and internal quotation marks omitted). *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). "[A] defendant is permitted a fact-based Rule 12(b) (1) motion, proffering evidence beyond the pleading. In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b) (1) motion...reveal the existence of factual problems' in the assertion of jurisdiction...If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision on standing." (Citations and internal quotation marks omitted). *Carter v. HealthPort Technologies, supra*, 822 F.3d at 57. *See also Amidax, supra*, 671 F.3d at 145("To the extent that... [the]...Rule 12(b) (1) motion placed jurisdictional facts in dispute...the district court properly considered evidence outside the pleadings.").

### B. Curry lacks standing because she has suffered no "Injury in fact," a required element of standing

The gravamen of Curry's complaint appears to be that, because Palmetto admitted that it was in violation of Conn. Gen. Stat. § 38a-73 in its never-adjudicated, subsequently withdrawn motion to revoke the bond, the Dulos Bond was therefore void

11

*ab initio* and she failed to get the benefit of the bargain for which she paid the contested premium. Plaintiff lacks standing because she fails to allege jurisdictional facts establishing that she suffered an "injury in fact," a necessary element of standing; the absence of an allegation of "injury in fact" in Curry's pleading is amplified by a factual record which discloses that: 1) the Defendants' performed all of their obligations under the Dulos Bond; 2) the Dulos Bond was still in full effect up until the date of Dulos' death; 3) no adverse consequences ever occurred due to inadequacies in the Dulos Bond to her or to Dulos and 4) when, six months after Dulos' death, the Connecticut Department of Insurance restricted Palmetto's license as a sanction for noncompliance with § 38a-73(a), it allowed Palmetto to continue servicing its existing bonds outstanding, that is, persons similarly situated to Dulos. As Curry has not alleged jurisdictional facts showing the requisite "injury in fact," she lacks standing, and therefore this Court cannot entertain her action.

"Article III restricts federal courts to the resolution of cases and controversies…That restriction requires that the party invoking federal jurisdiction have *standing* – the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Technologies*, *supra*, 822 F.3d at 55, *citing Davis*, *supra*, 554 U.S. at 732 (Emphasis in original). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." (Citations omitted). *Spokeo, Inc. v. Robins*, 136 S. Ct 1540, 1547 (2016).

"Our cases have established the irreducible constitutional minimum of standing consists of three elements. The Plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be

redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these three elements." (Citations omitted). *Spokeo, supra, citing Lujan v. Defenders of Wildlife*, 504 U.S. at 561. "If any of these three elements is missing, the federal court lacks jurisdiction to entertain the action." *Rothstein v. UBS AG*, 708 F.3D 82, 91 (2d Cir. 2013)

Injury in fact is the "first and foremost of standing's three elements." *Spokeo, Inc. v. Robins, supra*, 136 U.S. at 1547. "To establish 'injury in fact,' a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, **not conjectural or hypothetical**." (Emphasis added).(Citations and internal quotation marks omitted). *Id.* at 1548. "An injury in fact must...be 'concrete...' A 'concrete' injury must be '*de facto*;" that is, is must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' not 'abstract.' Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)." *Spokeo v. Robins, supra*, 136 S. Ct. at 1548.

In her Complaint, Curry asserts that based upon Palmetto's admission in its motion to revoke the Dulos Bond that it was in violation of Conn. Gen. Stat. 38a-73, the Dulos Bond was void *ab initio* and therefore "**Defendants have provided no benefit to the Plaintiff**." Compl. ¶¶ 13-15. Significantly, **nowhere** does Curry allege *how* the Defendants provided her with no benefit. She cannot provide specifications of such injury for the simple reason that regardless of the status of the Dulos Bond with respect to Connecticut law, the Defendants fully performed all of their responsibilities and

obligations on the bond, and neither the criminal court nor the prosecuting authority treated the bond as anything other than valid while Dulos lived. Curry was not deprived of any benefit under the Dulos Bond, nor does she so allege, and therefore she did not suffer the primary "injury in fact" from which her specific causes of action arise.

24/7's primary obligation on the Dulos bond was to take all necessary steps to secure Dulos' release, and once Dulos was out on bail, to ensure that he appear in court as ordered. Palmetto's primary obligation on the Dulos Bond was to serve as its guarantor. Until Dulos failed to appear at the hearing scheduled for January 28, 2020, he remained at liberty (under court-imposed conditions of release) entirely due to 24/7, and through it, Palmetto, fulfilling their responsibilities on the bond. At the hearing subsequent to Dulos' suicide attempt on January 29, 2020, when he was in custody under guard in New York, in reportedly "dire" medical condition, both the State's Attorney prosecuting Dulos and the Court reaffirmed the continuing validity of the Dulos Bond, when the prosecutor requested and the judge ordered that the Dulos Bond remain in place, raised by an additional $500,000.00. 24/7's and Palmetto's responsibilities on the bond were only cut short on or about January 30, 2020 when Dulos died as a consequence of his self-inflicted injuries.

Curry's claim hinges on Palmetto's filing a motion to revoke the Dulos Bond wherein Palmetto, in its capacity as guarantor of the bail bond serviced by 24/7, alleged that due to Dulos' and his agents misrepresentations of his equity interest in the real property used to secure the bond, Palmetto had exceeded the limitation of risk imposed by Conn. Gen. Stat. § 38a-73 (no insurer "shall expose itself to loss on any one risk to an amount exceeding ten per-cent of its paid-up capital and surplus"). However, the

Dulos Bond was never treated as a nullity by any relevant actor during its term of existence. In fact representatives of two of Connecticut's three branches of government, the judge and the prosecutor presiding over Dulos' criminal case, both maintained the ongoing validity of the bond *even after* Palmetto had filed its motion to revoke. Palmetto's motion to revoke the bond never had any legal effect, as it was never heard, let alone ruled upon, and was subsequently withdrawn by Palmetto on or about January 30, 2020.

Further, the Connecticut Department of Insurance, when it placed restrictions on Palmetto's ability to do business in Connecticut because of its noncompliance with § 38a-73(a) five months after Dulos' death, expressly permitted Palmetto to continue to service its existing bonds outstanding. *See* Ex. J, letter from Dept. of Insurance dated 7/26/2020. Therefore an inference may be drawn that Curry's claim that the Dulos Bond was void *ab initio* does not conform to the actions of the agency charged with enforcing such compliance, as the latter treated existing bonds as valid even as it sanctioned Palmetto for noncompliance. It can further be inferred from the Department of Insurance's permissiveness with respect to existing bonds that it views the statute as protecting only the State from default in criminal matters and not indemnitors of arrestees/criminal defendants such as Curry.

Curry, in failing to allege **how** she failed to get the benefit of the Dulos Bond has failed to plead essential jurisdictional facts, because she cannot. In simple terms "the Bad Thing" – Dulos' loss of liberty due to Defendants' conduct - never happened, and was never even raised as an issue by the criminal court or the prosecutor. Any claims of prospective injury are not only wholly speculative, they were cut short by Dulos' act of

self-murder and resultant failure to appear (in violation of his agreement with the Defendants).[10]

While research discloses no similar case on point involving a bail surety bond, a decision from a district court within the Second Circuit is instructive. In *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424 (W.D.N.Y 2015), *aff'd by Summary Order*, 680 Fed. Appx. 41 (2d Cir. 2017), insureds who had bought life insurance policies from the defendant carrier sued as a putative class on the grounds that the defendant had, through concealment and subterfuge, used captive reinsurers to avoid capital and reserve requirements mandated by New York State law, thereby potentially exposing the insureds to an inability to collect on a valid claim. *Id*. at 429-30. The gravamen of plaintiffs' claim of injury was that they had paid premiums for a product that was far more insecure than represented by the defendant. *Id*. at 431.

The defendant filed a 12(b) (1) motion arguing that plaintiffs lacked Article III standing. *Id*. The district court granted it, on the grounds that the plaintiffs failed to allege jurisdictional facts establishing the requisite "injury in fact," because they did not allege that the defendant failed to perform its side of the bargain. "In short, plaintiffs received what they bargained for – life insurance," where a colorable claim to surmount a standing challenge would require allegations that they received less than what was promised. *Ross v. AXA Equitable Life Ins.*, *supra*, 115 F. Supp. 435-36 and collecting

---

[10] *See* Ex. C. Financial Statement and Indemnity Agreement, ¶ 2. With such a fact pattern, standing jurisprudence regarding the requirement of injury in fact overlaps with the doctrine of "ripeness." *See National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688-89 (2d Cir. 2013). "A claim is not ripe [and therefore not justiciable] if it depends on contingent future events that may not occur as anticipated, or indeed may not occur at all." (Citations and internal quotation marks omitted). *Id*. at 687. "Constitutional ripeness…,is really just about the first *Lujan* factor [for standing, "injury in fact"]– to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury is not 'actual or imminent' but instead 'conjectural or hypothetical." *Id*. at 688. Palmetto's noncompliance with § 38a-73 did not negatively affect its agent 24/7's obligation with respect to Dulos. Ex. H, Willis Aff. ¶ 20. *See also* Ex. J., Letter from Insurance Dept. 6/26/2020. Therefore Curry's claim has never ripened, and never will.

16

cases. The district court concluded that because plaintiffs' claimed injury rested on the occurrence of a number of events not alleged, because such events were contingent on facts that had never transpired – namely the chain of events due to undercapitalization that would have led to the defendant defaulting on its obligations to the plaintiffs – then their "theory of injury...is far too hypothetical, speculative, and uncertain to constitute an imminently threatened injury worthy of federal judicial intervention." *Id.* at 437-38. The Second Circuit, in affirming, agreed that plaintiffs had failed to alleged jurisdictional facts, in that there was no claim that defendant had failed to perform its obligations despite its undercapitalization. *Ross v. AXA Equitable Life. Ins. Co.*, 680 Fed. Appx. 41, 46 (2d Cir. 2017).

As in the *Ross* case, the injury Curry here alleges therefore fails to meet the threshold requirements for an "injury in fact" under our standing jurisprudence. It is impermissibly conjectural and hypothetical, in that it is based on events that never transpired – Dulos being re-arrested due to Defendants' noncompliance with the statute – the probability of which is a matter of speculation. *See Spokeo v. Robins, supra*, 136 S. Ct. at 1548. Her unsupported claim that she received no benefit is belied by the uncontestable fact that the Defendants performed their responsibilities under the bond until Dulos' suicide rendered further performance impossible, thereby rendering her injury "abstract," rather than one that "actually exists," lacking the requisite *de facto* "concreteness" required of an injury in fact for the plaintiff to have standing. *See id.*

The Defendants' continuing capacity to perform its obligations regardless of its compliance with the statute was affirmed by both the criminal court and the prosecuting authority's recognition of the continuing validity of the bond the day after Palmetto filed

its motion to revoke, and by the Connecticut Department of Insurance's permitting, five months after Dulos' death, Palmetto to continue to service its existing bonds outstanding – meaning persons similarly situated to Dulos - even as the agency sanctioned Palmetto for noncompliance with the statute. To use a banal metaphor, the injury asserted is comparable to an Uber customer suing the driver for a refund of her fare following a completed ride on the grounds that the customer subsequently learned the driver was not complying with state vehicular insurance mandates. The customer would lack standing because no harm befell her due to the driver's noncompliance and she did in fact receive the benefit of the driver's services. Such is the nature of Curry's claim. Any prospective harm that may have occurred based upon Palmetto's noncompliance with § 38a-73 is ephemeral, not real, and therefore fails to satisfy Article III standing.

## IV. CONCLUSION

Wherefore, for all of the reasons herein, Defendants Palmetto Surety Corporation, 24/7 Bail Bonds, LLC, William J. Sobota and Jerry Cao move that Plaintiff Anna K. Curry's complaint be dismissed in its entirety on the grounds that because she has not plead facts alleging that she suffered an "injury in fact," she therefore lacks standing to sue.

PALMETTO SURETY CORPORATION,
24/7 BAILBONDS, LLC, WILLIAM SOBOTA
and JERRY CAO,
By Their Attorneys,
ROME MCGUIGAN, P.C.

By: _____
A. Ryan McGuigan
Fed. Bar No. ct24571
Thomas Plotkin
Fed. Bar No. ct27917
Rome McGuigan, P.C.
One State Street, 21st Floor
Hartford, CT 06103
Tel. (860) 549-1000
Fax: (860) 724-3921
Email: rmcguigan@rms-law.com
tplotkin@rms-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Thomas Plotkin

20200-1/N31404