# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNA K. CURRY,<br><br>    Plaintiff,<br><br>v.<br><br>PALMETTO SURETY CORPORATION,<br>24/7 BAILBONDS, LLC,<br>WILLIAM SOBOTA and JERRY CAO,<br><br>    Defendants. | CIVIL ACTION NO. 3:21-00221(SRU)<br><br><br><br><br><br><br><br>MAY 6, 2021 |

## AFFIDAVIT OF ANNA K. CURRY

STATE OF NORTH CAROLINA    )
                                       ) ss: Charlotte
COUNTY OF MECKLENBURG    )

Anna K. Curry, being duly sworn, deposes and says as follows:

    1.    I am over the age of eighteen (18) years and understand the obligations of an oath.

    2.    I make this affidavit based upon my personal knowledge.

    3.    This Affidavit is submitted in opposition to Defendants Palmetto Surety Corporation, ("PSC") 24/7 Bailbonds, LLC ("24/7"), William Sobota ("Sobota") and Jerry Cao (collectively "Defendants") April 16, 2021 Motion to Dismiss (the "Motion").

    4.    I have reviewed the Motion as well as the affidavits, memorandum (the "Defendants' Memorandum") and exhibits submitted therewith.

5. On or around January 9, 2020, I provided $147,000.00 (the "Plaintiff's Premium Deposit") in the form of two cashier's checks to Sobota as a premium deposit in support of a $6,000,000.00 bail bond (the "Bond") for the release of Fotis Dulos ("Dulos") in connection with State v. Dulos, D.N. CR-20-0241180-T.

6. I provided the Plaintiff's Premium Deposit based on my understanding that 24/7 was working with a company, PSC, which was able to write a $6,000,000.00 million bond in the State of Connecticut in full compliance with its laws and regulations. During the course of my discussions with Defendants about the Bond, I emphasized that the bonding process be conducted "above board". I also related to Defendants my belief that the Bond would be heavily scrutinized on account of its large size and the intense around-the-clock media coverage of the Dulos case. Defendants assured me that the Bond would be done properly and there would be no legal issues associated with it. Only after these assurances were made did I arrive at the understanding that PSC could legally issue the Bond under Connecticut law. Comments from each of Defendants brought me to that understanding.

7. Defendants knew or should have known that PSC did not possess sufficient capital and reinsurance to write the Bond. Prior to making the Plaintiff's Premium Deposit, I had no knowledge that PSC in fact was not sufficiently capitalized to issue the Bond pursuant to Connecticut state law.

8. I did not execute the January 9, 2020 "Unpaid Premium Agreement" which appears as Exhibit D to Defendants' Memorandum nor did I ever execute any document similarly entitled "Unpaid Premium Agreement".

9. Attached as Exhibit 1 is a January 16, 2020 email from Mary Anne Casey to the Connecticut Department of Insurance. I obtained this email from a third party who sourced it off

2

the internet. Despite its date, I did not become aware of the contents of this email until the summer of 2020.

10. I have lost an actual, concrete and particularized amount of money, $147,000.00, as a direct and proximate result of Defendants' actions, namely the collection, detention and conversion of the Plaintiff's Premium Deposit.

*Anna K. Curry*
Anna K. Curry

Subscribed and sworn to before me this 6th day of May, 2021.

*Michelle Hatfield*
Notary Public
My commission expires: Sept 20, 2021

**MICHELLE HATFIELD**
Notary Public
Mecklenburg Co., North Carolina
My Commission Expires Sept. 20, 2021

# EXHIBIT 1

From: Mac Owner [mailto:...]
Sent: Thursday, January 16, 2020 11:25 AM
To: Pomerleau, Andre <...>
Cc: Stegall, Amy <...>
Subject: Fotus Dulos Bond

Dear Andre:

I am extremely concerned with the bonds written for the above named defendant. My concern has nothing to do with premiums collated and reported. My concern is regarding the financial stability of Palmetto Surety and their legal ability to execute a bond of this size. Looking at their financials posted, as of 2018 their capital and surplus was $4,661,605. As I'm sure you're aware, this would only allow any agent to post a bond in excess of $466,000 with sufficient collateral to cover said bond. For the past two out of three years, their financials show more premium being collected but losses still being reported. This, in itself, raises a red flag. The only way a bond of this size could have been executed legally is if another company was willing to reinsure them. I highly doubt this occurred. I implore this department to contact their domicile state, which I believe is South Carolina, although there has been some talk that it now may be Florida, request that they carefully look over what collateral was taken to assure the State of Connecticut that should this defendant flee, Connecticut would be able to collect. As of right now, Please contact me should you have any questions. I appreciate an assistance you can give me. I am sincere when I say I am only trying to make sure that the victim and her family are not victimized twice by a faulty system.

Mary Anne Casey
Casey Bail bonds, Inc.,

CURRY000006

1