# Caporale, Antonio

Tony,

We received this complaint from Mary Casey.

Thanks.

Amy Stegall
Program Manager
Fraud & Investigations

(860) 297-3933
Facsimile (860) 297-3872

-----Original Message-----
From: Mac Owner [mailto:mcasey02@earthlink.net]
Sent: Thursday, January 16, 2020 11:25 AM
To: Pomerleau, Andre <Andre.Pomerleau@ct.gov>
Cc: Stegall, Amy <Amy.Stegall@ct.gov>
Subject: Fotus Dulos Bond

Dear Andre:

I am extremely concerned with the bonds written for the above named defendant. My concern has nothing to do with premiums collated and reported. My concern is regarding the financial stability of Palmetto Surety and their legal ability to execute a bond of this size. Looking at their financials posted, as of 2018 their capital and surplus was $4,661,605. As I'm sure you're aware, this would only allow any agent to post a bond in excess of $466,000 with sufficient collateral to cover said bond. For the past two out of three years, their financials show more premium being collected but losses still being reported. This, in itself, raises a red flag. The only way a bond of this size could have been executed legally is if another company was willing to reinsure them. I highly doubt this occurred. I implore this department to contact their domicile state, which I believe is South Carolina, although there has been some talk that it now may be Florida, request that they carefully look over what collateral was taken to assure the State of Connecticut that should this defendant flee, Connecticut would be able to collect. As of right now, Please contact me should you have any questions. I appreciate any assistance you can give me. I am sincere when I say I am only trying to make sure that the victim and her family are not victimized twice by a faulty system.

Mary Anne Casey
Casey Bail bonds, Inc.,
860-459-9453

CTDOIFOI000113

assistance you can give me. I am sincere when I say I am only trying to make sure that the victim and her family are not victimized twice by a faulty system.

Mary Anne Casey
Casey Bail bonds, Inc.,
860-459-9453

CTDOIFOI000331



**From:** Carson, Jim <Jim.Carson@ct.gov>
**Sent:** Wednesday, January 29, 2020 3:34 PM
**To:** Lee Hill <lhill@doi.sc.gov>
**Subject:** CID Statement

**WARNING**

This is an external email. DO NOT CLICK links or open attachments unless you recognize the sender and know that the content is safe.

Here is the statement from the Connecticut Insurance Department that was released to the media today at 3:30pm.

"The Department received a complaint concerning the bond that was issued and began an investigation in accordance with our laws and regulations. As part of the investigation we contacted the regulator responsible for the insurance company."

Jim Carson
Communications Director
Connecticut Department of Insurance
860-297-3958 (o)
860-214-1539 (c)
Jim.Carson@CT.GOV

## Caporale, Antonio

**From:** Caporale, Antonio
**Sent:** Friday, June 5, 2020 10:38 AM
**To:** Belfi, Kathy; Welch, Maura
**Cc:** Kosky, Jared
**Subject:** RE: Palmetto Surety

I agree with Kathy. In CT the amount of any one risk subject to the pertinent statute's restriction can be reduced only by any amount of the risk at issue that has been reinsured in "<u>any insurance company meeting the requirements of 38a-85 or 38a-86</u>", i.e. a reinsurer authorized to transact business in this state for which the ceding domestic insurer can receive credit for reinsurance. See C.G.S. sec. 38a-73.

Tony

**From:** Belfi, Kathy
**Sent:** Friday, June 5, 2020 10:00 AM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Caporale, Antonio <Antonio.Caporale@ct.gov>; Kosky, Jared <Jared.Kosky@ct.gov>
**Subject:** RE: Palmetto Surety

That is fine but I don't think it is our interpretation here in CT. I am cc Tony and Jared asking for confirmation. Thanks

**From:** Welch, Maura
**Sent:** Friday, June 5, 2020 9:05 AM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Subject:** FW: Palmetto Surety

Kathy;

Both parties from the SC DOI have accepted the meeting for Tuesday.
Below is SC's response to my question about the interpretation of the 10% retention limit for bail bonds.
The email from yesterday indicates that the collateral accounts that they accept to allow the insurer to meet the 10% risk retention statute will be part of the targeted examination that they are doing.

Sorry for the confusion yesterday.

Maura Welch
Connecticut Insurance Department
(860) 297-3827

**From:** Michael Shull [mailto:mshull@doi.sc.gov]
**Sent:** Thursday, March 5, 2020 3:10 PM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Ryan Basnett <rbasnett@doi.sc.gov>; Thomas Baldwin <tbaldwin@doi.sc.gov>
**Subject:** RE: Palmetto Surety

CTDOIFOI000310

Hey Maura, per our conversation, I attached the amended confidential supervision order with the additional stipulations.

Also, I spoke with our legal area about our interpretation of the retention limit of 10% of C&S, but I'll take a shot at it. Our department has taken the approach to let bail bond companies reduce their retention by using collateral and BUF funds for the agent who wrote a bond. Our law states that a company can't retain more than 10% of their C&S, but reinsurance can be used to reduce the retention. We view legitimate collateral and BUF funds as an alternative to reinsurance to accomplish the same intent of lowering the exposure to C&S.

Please let me know if you have any questions or need more information.

Thank you,
Michael

**From:** Welch, Maura [mailto:Maura.Welch@ct.gov]
**Sent:** Thursday, March 5, 2020 9:33 AM
**To:** Ryan Basnett <rbasnett@doi.sc.gov>
**Cc:** Michael Shull <mshull@doi.sc.gov>
**Subject:** RE: Palmetto Surety

WARNING

This is an external email. DO NOT CLICK links or open attachments unless you recognize the sender and know that the content is safe.

Very good.

Thank you,

Maura Welch
Connecticut Insurance Department
(860) 297-3827

**From:** Ryan Basnett [mailto:rbasnett@doi.sc.gov]
**Sent:** Thursday, March 5, 2020 9:25 AM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Michael Shull <mshull@doi.sc.gov>
**Subject:** RE: Palmetto Surety

Great. We will give you a call at 2pm today.

Thanks,

# Ryan Basnett, PIR, CISR ᶜSC DOI
Senior Financial Analyst/Company Admissions Manager
1201 Main Street, Suite 1000
Columbia, SC 29201
Office: (803) 737-6114

**From:** Welch, Maura [mailto:Maura.Welch@ct.gov]
**Sent:** Thursday, March 05, 2020 9:23 AM

CTDOIFOI000311

**To:** Ryan Basnett <rbasnett@doi.sc.gov>
**Cc:** Michael Shull <mshull@doi.sc.gov>
**Subject:** RE: Palmetto Surety

WARNING

This is an external email. DO NOT CLICK links or open attachments unless you recognize the sender and know that the content is safe.

Yes, I have time from 1:30 to 2:30 today.

Maura Welch
Connecticut Insurance Department
(860) 297-3827

**From:** Ryan Basnett [mailto:rbasnett@doi.sc.gov]
**Sent:** Thursday, March 5, 2020 9:14 AM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Michael Shull <mshull@doi.sc.gov>
**Subject:** Palmetto Surety

Good Morning Maura,

I'm sorry I missed you yesterday. We are going through the statement for Palmetto and have outstanding questions to the Company that we are waiting to hear back on. Would you have time this afternoon between 1:30-3 to discuss?

Thanks,

**Ryan Basnett, PIR, CISR** SC DOI
Senior Financial Analyst/Company Admissions Manager
1201 Main Street, Suite 1000
Columbia, SC 29201
Office: (803) 737-6114



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

SENT VIA EMAIL TO  swillis@palmettosurety.net

June 26, 2020

Mr. Scott Willis
Palmetto Surety Corporation
75 Port City Landing, Suite 130
Mount Pleasant, SC  29464

Re:     Connecticut Certificate of Authority for Palmetto Surety Corporation ("Palmetto" or "the Company")

Dear Mr. Willis:

Your response to the Connecticut Insurance Department's ("the Department")  letter to you dated June 12, 2020 has confirmed that Palmetto is not in compliance with Connecticut General Statute ("CGS") §38a-73(a) which states as follows:

> No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten per cent of its paid-up capital and surplus; but, **in determining the amount of such risk, no portion thereof that has been reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included**.

Although the South Carolina Department of Insurance allows Palmetto to use collateral and/or agent's build up fund accounts to offset the gross risk on any one bond, the Department only allows the amount at risk to be reduced through reinsurance obtained from an insurer that is licensed or approved in the Company's state of domicile.

The Financial Regulation Division considers all the operations of the Company when determining if it maintains adequate capital to support the business it writes in Connecticut.  In your response, you described an instance where the Company wrote a large bond on a risk located in South Carolina. The location of the risk is not relevant when applying our statutes.  The total amount at risk of $2.5 million exceeded the 10% limit under CGS §38a-73(a) and the fact that it was written puts the entire Company at risk.  Should there be a default and the collateral was not immediately available to cover the amount owed, Palmetto may become insolvent.  In addition only the build up funds retained from the bail bondsman that wrote the large bond could be used to pay the court.

Additionally, the Department is fully aware that Palmetto wrote a large bond on a Connecticut risk which also exceeded the 10% of capital limitation.  Because Palmetto is licensed in Connecticut, it is bound to operate in accordance with Connecticut General Statutes including CGS §38a-73(a) but it has failed to do so.

Exhibit D,  Page 7

CTDOIFOI000062

Pursuant to CGS § 38a-41 and Connecticut Regulations § 38a-8-104(b)(2) the Department has the authority to suspend an insurer's license or reduce, suspend, or limit the volume of business being accepted or renewed when cause has been found. Based upon the above, the Department has found such cause to exist and has taken the following action: effective June 26, 2020 a restriction was placed on Palmetto's license in Connecticut, prior authorization to write fidelity and surety line of business is revoked and the Company may continue only to service its existing bonds outstanding. The amended license will be mailed to you.

Palmetto may reapply to the Department to have the line of authority reinstated only after it can prove that it will operate in accordance with Connecticut Statutes.

Sincerely,

*Kathy Belfi*

Kathy Belfi, CPA
Director Financial Regulation
Connecticut Insurance Department

cc:     Commissioner Mais, CT
        Michael Shull, SC Insurance Department

CTDOIFOI000063



# STATE OF CONNECTICUT
### *INSURANCE DEPARTMENT*

July 14, 2020

A. Ryan McGuigan, Esq.
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103

Re:  Palmetto Surety Corporation ("Palmetto")

Dear Ryan,

I hope that this communication finds you and your family in good health.

Please accept this communication as a response to your letter to Commissioner Mais dated July 10, 2020, in which you refer to a previous request for a hearing in this matter and you ask that the Commissioner suspend or postpone an order issued on or about June 26, 2020 against Palmetto ("Order") pending the outcome of the hearing.

Please be advised that your request for hearing dated June 26, 2020 has just come to my attention, having been received only today by the financial examiner handling the matter at issue in the Order. Although, as you know, the Governor's Executive Order 7M dated March 25, 2020 extends "any statutory or regulatory time requirements, decision-making requirements, hearing, or other time limitations or deadlines" for administrative department heads to undertake matters relating to such departments respective jurisdictions, the Insurance Department will make any reasonable effort, given the actual circumstances, to schedule the hearing requested as soon as practicable.

As it concerns your request of a stay of the Order, I will note that the Department's Financial Examination Division has determined that Palmetto's RBC has fallen below 200%, indicating that, under current statutory and regulatory guidelines and requirements, Palmetto does not currently have a sufficient amount of reserves for the protection of Connecticut insureds. As such, the Commissioner is not inclined to issue a stay of the Order, especially in light of Palmetto's recent actions in underwriting a bond issued to Connecticut residents in violation of specific statutory requirements.

Finally, although not relevant to your client's right to a hearing in this matter or to the timing of such hearing, I would like to correct a perceived inaccuracy in your July 10 letter. While I recall a recent telephone conversation in which you indicated that you had called to ask my advice about how to request a hearing in this matter, which ultimately

you were able to find on your own, I have no recollection about any discussion specifically addressing the Department's ability to convene such a hearing or any timing thereof.

As always, should you have any questions, please feel free to contact me at (860) 297-3981.

Very best regards,

Anthony Caporale
Counsel

CTDOIFOI000059



ROME
McGUIGAN, P.C.
*Attorneys at Law*

One State Street   Hartford, CT 06103
*phone* 860.549.1000   *fax* 860.724.3921
*www.romemcguigan.com*

A. Ryan McGuigan
Direct Dial: (860) 493-3539
E-Mail: rmcguigan@rms-law.com

August 26, 2020

**VIA FACSIMILE – (860) 566-7410**
**AND EMAIL**

Anthony Caporale, Esq.
State of Connecticut Insurance Department
P.O. Box 816
Hartford, CT 06142-0816
Email: Antonio.caporale@ct.gov

> Re:   Revocation of Connecticut Certificate of Authority
>       for Palmetto Surety Corporation

Dear Tony:

As you know, this office represents Palmetto Surety Corporation ("Palmetto"). Pursuant to Conn. Gen. Stat. § 38a-19(a), Palmetto hereby renews its request for a stay from the Commissioner of the decision to revoke Palmetto's Certificate of Authority to write fidelity and surety bail bonds in the State of Connecticut, dated June 26, 2020 (the "Order").

On June 26, 2020, our office requested a hearing on behalf of Palmetto before the Commissioner to contest the Order. As you know, Conn. Gen. Stat. § 38a-19(a) provides, in relevant part:  [p]ending such hearing and decision on such hearing the Commissioner may suspend or postpone the effective date of his previous order or decision.

On July 14, 2020, our office received correspondence from you indicating that Palmetto's first request for a stay of the Order was denied.

The request for a stay of the Order is renewed on the basis that Palmetto's capital and surplus was at $5,950,323 on June 30, 2020, which is an RBC of 204%. Attached for reference is a copy of Palmetto's Quarterly Financial Statement as of June 30, 2020, which was submitted to the National Association of Insurance Commissioners and the South Carolina Department of Insurance.  Palmetto now has a

Exhibit D,  Page 11                                  CTDOIFOI000024

sufficient amount of reserves for the protection of Connecticut residents under current statutory and regulatory guidelines and requirements.

We respectfully ask the Commissioner to reconsider entering a stay of the Order on grounds that Palmetto has provided evidence of its compliance with Connecticut's RBC requirement.

In the event that the Commissioner refuses to exercise its statutory discretion to stay the Order until a final decision is rendered after a hearing on the Order, then Palmetto has authorized our office to appeal the Order to the Superior Court pursuant to Conn. Gen. Stat. § 38a-19(d) and seek a temporary injunction.

Thank you for your consideration.

Very truly yours,

A. Ryan McGuigan

Encls.
ARM/exp

CTDOIFOI000025

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Tuesday, September 1, 2020 1:02 PM |
| **To:** | Welch, Maura; Belfi, Kathy |
| **Subject:** | RE: Palmetto Security Corporation - Revocation of CofA |

Hello ladies,

So is it your position that no stay should be allowed?

I am in the office Tue and Thu if there is need for discussion.

Tony

**From:** Welch, Maura
**Sent:** Friday, August 28, 2020 8:56 AM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>
**Subject:** Re: Palmetto Security Corporation - Revocation of CofA

Good morning Kathy and Tony;

The letter from Attorney McGuigan did not address Palmetto's non compliance with CGS section 38a-73(a).

Palmetto does not operate in accordance with this statute. The South Carolina Department of Insurance allows Palmetto to use collateral and/or agent's build up fund accounts to offset the gross risk on any one bond, the CID only allows the amount at risk to be reduced through reinsurance obtained from an insurer that is licensed or approved in the Company's state of domicile.

Maura

**From:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Sent:** Thursday, August 27, 2020 9:46 AM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Subject:** FW: Palmetto Security Corporation - Revocation of CofA

Please call me regarding this

**From:** Caporale, Antonio
**Sent:** Wednesday, August 26, 2020 9:14 AM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>; Welch, Maura <Maura.Welch@ct.gov>
**Subject:** FW: Palmetto Security Corporation - Revocation of CofA

Good morning ladies,

Hope all's well at your end.

205     CTDOIFOI000280

Please let me have your comments on the attached from Atty. McGuigan.

Thanks,
Tony

**From:** Loretta A. Boggan [mailto:lboggan@rms-law.com]
**Sent:** Tuesday, August 25, 2020 5:05 PM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Subject:** Palmetto Security Corporation - Revocation of CofA

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Please see attached letter from Attorney McGuigan regarding the above matter.

Loretta A. Boggan
Legal Assistant



One State Street, Hartford, CT 06103
Phone: 860.549-1000
Email: lboggan@rms-law.com
(860) 493-3487
(860) 724-3921 (fax)

### PRIVILEGE AND CONFIDENTIALITY NOTICE

The information in this electronic mail is intended for the addressed recipient(s) only. This email may contain privileged and confidential material from the law firm of Rome McGuigan, P.C. If you are not the intended recipient, please be advised that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this email in error, please notify the sender immediately by replying to this email or by telephone. The above signer is not a licensed attorney and nothing in this email shall be construed as legal advice. Thank you.

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Wednesday, September 16, 2020 10:36 AM |
| **To:** | Ryan McGuigan |
| **Subject:** | RE: Palmetto |

Hello Ryan,

Sounds good! I will draft a stipulation and agreement and send it to you in a day or two.

Very best and stay safe,
Tony

-----Original Message-----
From: Ryan McGuigan [mailto:rmcguigan@rms-law.com]
Sent: Tuesday, September 15, 2020 4:06 PM
To: Caporale, Antonio <Antonio.Caporale@ct.gov>
Subject: Palmetto

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

I have spoken to my client and we have an agreement. Send me over the particulars and to whom the check shall be made and I will cut a check from our client account. Thank you for you patience and expertise on this.

Your friend,
Ryan

CTDOIFOI000274

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Wednesday, September 16, 2020 10:46 AM |
| **To:** | Belfi, Kathy |
| **Cc:** | Kosky, Jared; Welch, Maura |
| **Subject:** | Palmetto/Stipulation |
| **Attachments:** | PalmettoStip0920.docx |

Good morning all,

Ryan McGuigan has indicated that Palmetto is willing to accept the conditions that we have recently discussed. I am attaching a proposed agreement for your comments before I send it to Atty. McGuigan. Please let me have your comments/thoughts if any.

Thanks,
Tony

CTDOIFOI000273

# STATE OF CONNECTICUT
## *INSURANCE DEPARTMENT*

IN THE MATTER OF:       )
                                )
PAMETTO SURETY CORPORATION  )    Docket No.: MC 20-94
                                )
        Respondent        )

## Stipulation and Consent Order

It is hereby stipulated and agreed between Palmetto Surety Corporation and the State of Connecticut Insurance Department by and through Andrew N. Mais, Insurance Commissioner, to wit:

WHEREAS, Palmetto Surety Corporation ("Respondent"), NAIC # 13121, is an insurer domiciled in the State of South Carolina and is currently authorized to write fidelity and surety lines of business in Connecticut;

WHEREAS, the Department received information indicating that the Respondent's financial condition had become such that the Respondent did not possess sufficient reserves for the protection of Connecticut insureds and the payment of outstanding obligations;

WHEREAS, the Department alleges that the Respondent has underwritten a surety bail bond issued to a Connecticut resident in an amount in excess of ten percent of the Respondent's paid up capital and surplus, in violation of current statutory requirements;

WHEREAS, on June 26, 2020, in response to the Respondent's above referenced financial condition and statutory violation, the Department restricted the Respondent's license and revoked the Respondent's prior authority to write fidelity and surety lines of business in Connecticut, limiting the Respondent's authority to servicing existing business;

WHEREAS, the Commissioner alleges that the conduct described above is in violation of sections 38a-14 and 38a-73(a) of the Connecticut General Statutes and constitutes cause pursuant to Sections 38a-2 and 38a-41 of the Connecticut General Statutes and Section 38a-8-104 of the Regulations of Connecticut State Agencies Department for the imposition of fines and/or for the suspension of an insurer's license, or for the Department to reduce, suspend or limit the amount of business that the Respondent is allowed to accept or renew;

WHEREAS, on August 26, 2020 the Respondent submitted financial information and documentation to the Department indicating that the Respondent had increased its reserves so that it now possesses a sufficient amount of capital and surplus for the protection of Connecticut residents under the current statutory and regulatory guidelines;

WHEREAS, in an effort to avoid the expenses and uncertainty of litigation and/or an administrative proceeding, the Respondent admits the allegations contemplated by the Department and, in that respect, voluntarily waves;

a. Any right to a hearing;

b. Any requirement that the Commissioner's decision contain a statement of findings of fact and conclusions of law; and

c. Any and all rights to object to or challenge before the Commissioner or in any judicial proceedings any aspect, provision or requirement of this Stipulation and Consent Order.

WHEREAS, the Respondent agrees to pay a fine in the amount of $5,000.00 (five thousand dollars), payable upon the execution of this Stipulation and Consent Order;

WHEREAS, the Respondent agrees to maintain an amount of capital and surplus at a sufficient level for the protection of Connecticut insureds;

WHEREAS, the Respondent agrees that it will not in the future underwrite surety bail bonds in excess of ten percent of the Respondent's capital and surplus in any jurisdiction;

WHEREAS, the Respondent agrees to submit a semi-annual filing (in June and December) to the Foreign Licensing Unit attesting to all bonds issued along with the amount underwritten;

WHEREAS, the Department agrees to lift the current restrictions on the Respondent's license and to restore the Respondent's authority to place surety and fidelity business in Connecticut;

WHEREAS, the respondent agrees that its authority to write business in Connecticut shall be immediately reduced or suspended if the Respondent violates any conditions of this Stipulation and Consent Order.

NOW THEREFORE, upon the consent of the parties, it is hereby ordered and adjudged that:

1. The Respondent is assessed a fine in the amount of $5,000.00 (five thousand dollars) to be paid upon execution of this Stipulation and Consent Order.

2. The Respondent shall maintain at all times in the future an amount of capital and surplus at sufficient levels to pay existing obligations.

3. The Respondent shall not in the future underwrite surety bail bonds in excess of ten percent of the Respondent's capital and surplus in any jurisdiction.

4. The current restrictions on the Respondent's license are hereby lifted and the Respondent's authority to place surety and fidelity business in Connecticut is hereby restore.

Consented and agreed to on this _28__ day of _September_ 2020.

Palmetto Surety Corporation

CTDOIFOI000012

By: _(signature) Sam B Willis_

## CERTIFICATION

The undersigned deposes and says that she/he has duly executed this Stipulation and Consent Order on this __24th__ day of __September__ 2020, for and on behalf of Palmetto Surety Corporation; that she/he is the __CEO__ of such Company, and she/he has authority to execute and file such instrument.

By: _(signature) Dollie J. Pilson_

STATE OF __SC__ )
                        ) SS
COUNTY OF __CHARLESTON__ )

On the __24th__ day of __September__ 2020, before me personally appeared __Scott B. Willis__ , signer and sealer of the foregoing Stipulation and Consent Order, and acknowledged same to be her/his free act and deed.

_(notary stamp)_
DOLLIE J. PILSON
Notary Public, State of South Carolina
My Commission Expires April 6, 2023

_(signature)_ the Superior Court

---

*Section Below To Be Completed by State of Connecticut Insurance Department*

Dated at Hartford, Connecticut this    30th    day of    September    2020.

_(signature)_

Andrew N. Mais
Insurance Commissioner

Exhibit D,  Page 19

CTDOIFOI000013

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Monday, October 19, 2020 12:54 PM |
| **To:** | Welch, Maura |
| **Cc:** | Belfi, Kathy |
| **Subject:** | RE: Transmittal letter for Palmetto |

Hi Maura,

I have no concerns about the letter. You may just want to correct the typo in the second line of page two, it should be "an insurer" rather than "a insurer".

Take care,

Tony

**From:** Welch, Maura
**Sent:** Monday, October 19, 2020 12:27 PM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Cc:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Subject:** FW: Transmittal letter for Palmetto

Tony;

Attached is the transmittal letter that we want to send to Palmetto when we reinstate the license.
We discussed the stipulation agreement with South Carolina who was not convinced that Palmetto understood that it must apply the risk limitation to All jurisdictions when they signed the stipulation agreement. The letter includes some additional explanation regarding the terms of the agreement to make sure that it is clear.

Let me know if you have any comments.
We hope to have the line reinstated by tomorrow or Wednesday.

Maura Welch
Connecticut Insurance Department
(860) 297-3827

**From:** Welch, Maura
**Sent:** Tuesday, October 13, 2020 12:58 PM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Subject:** Transmittal letter for Palmetto

Kathy;

Attached is a draft transmittal letter for Palmetto Surety Corporation's amended license. The amendment date will be a date after you approve this letter and when we can physically issue the new certificate.

I put myself as signer unless you think it is important for you to sign it. I also clarified the period of time for the reporting and submission of the semi- annual report that we require.

Let me know if you have any recommended changes.

Maura F. Welch, CPA, CFE
Insurance Certified Supervising Examiner
Connecticut Insurance Department
(860) 297-3827

This message and any attachments are from the Financial Regulation Division of the Connecticut Insurance Department and are intended solely for the addressee. The information contained herein is confidential and may be legally privileged or exempt from disclosure pursuant to applicable law. If the reader of this communication is not the intended recipient, you are hereby notified that you have received this communication in error and that any use, review, dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender immediately by e-mail and delete this e-mail and any copy thereof.



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

SENT VIA EMAIL TO swillis@palmettosurety.net

October 20, 2020

Mr. Scott Willis
Palmetto Surety Corporation
75 Port City Landing, Suite 130
Mount Pleasant, SC 29464

Re:     Connecticut Certificate of Authority for Palmetto Surety Corporation ("Palmetto" or "the Company")

Dear Mr. Willis:

Enclosed is the Certificate of Authority for Palmetto that was recently amended. The amendment was done in order to lift the restriction placed on the Company's Connecticut business, revoking the line of authority previously granted (number 14 – Fidelity and Surety; bail bonds only) and allowing the Company to only service its existing business and require that no new business be written. Effective October 20, 2020, the Fidelity and Surety line was reinstated.

The line of authority was reinstated due to the operating conditions that you agreed to implement as set forth in the copy of stipulation agreement ("the Agreement") that is attached. The stipulation agreement conditions assure that Palmetto will operate in compliance with Connecticut General Statute ("CGS") §38a-73(a) which states as follows:

> No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten per cent of its paid-up capital and surplus; but, in determining the amount of such risk, no portion thereof that has been reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included.

The Connecticut Insurance Department ("the Department") requires a strict adherence to the above statute. Part c. of the Agreement sets forth additional conditions agreed to by Palmetto as follows:

- Palmetto agrees to maintain an amount of capital and surplus at a sufficient level for the protection of Connecticut insureds;

- Palmetto agrees that it will not in the future underwrite surety bail bonds in excess of ten percent of its capital and surplus in **any jurisdiction**;

- Palmetto agrees to submit a semi- annual filing (June and December) to the Foreign Licensing Unit attesting to all bonds issued along with the amount underwritten.

PSC000834

When determining compliance with CGS §38a-73(a), the Financial Regulation Division considers all the operations of the Company to determine if an insurer maintains adequate capital to support the business it writes in Connecticut. This differs from the interpretation of a similar statute by the South Carolina Department of Insurance that allows Palmetto to use collateral and/or agent's build up fund accounts to offset the gross risk on any one bond. The Connecticut Insurance Department only allows the amount at risk to be reduced through reinsurance obtained from an insurer that is licensed or approved in the Company's state of domicile.

The semi-annual filing that will summarize all bonds issued by Palmetto along with the amount underwritten must be prepared for the periods from January through June and July through December each year. The deadline for filing is as follows:

- January through June - Due by August 1 each year;
- July through December – Due by March 1 each year.

The semi – annual filing should be forwarded to the Connecticut Insurance Department Financial Regulation Division at the following address:

> **Overnight packages:** 153 Market Street, Hartford, CT 06103
> **Standard mail:** PO Box 816, Hartford, CT 06142-0816

If you have any questions regarding this communication, please feel free to contact me directly via email to Maura.Welch@ct.gov . My telephone number at the Department is (860) 297-3827 but under the current pandemic conditions our Department is working remotely therefore, email is the recommended way to communicate with us.

Sincerely,

Maura F. Welch, CFE, CPA
Insurance Certified Supervising Examiner
Financial Analysis and Compliance Division
(860) 297-3827

cc:    Michael Shull, SC Insurance Department

PSC000835



A. Ryan McGuigan
Direct Dial: (860) 493-3539
E-Mail: rmcguigan@rms-law.com

One State Street   Hartford, CT 06103
*phone* 860.549.1000   *fax* 860.724.3921
*www.romemcguigan.com*

December 7, 2020

**VIA FACSIMILE – (860) 566-7410
AND EMAIL**

Andrew N. Mais, Commissioner
State of Connecticut Insurance Department
153 Market Street, 7th Floor
Hartford, CT 06103

Re:  **Clarification of Stipulation and Consent Order
Docket No. MC 20-94**

Dear Commissioner Mais:

This office represents Palmetto Surety Corporation ("Palmetto"). Palmetto respectfully requests that the State of Connecticut Insurance Department ("CID") clarify, in writing, that the Stipulation and Consent Order entered into by Palmetto and the CID dated September 28, 2020 ("Consent Order")[1] restricts Palmetto from underwriting a surety bail bond in excess of ten percent of Palmetto's capital and surplus in Connecticut only, such that Palmetto is not restricted from underwriting a surety bail bond in excess of ten percent of Palmetto's capital and surplus in any other jurisdiction, subject to the laws of other jurisdictions.

It has come to our attention that the CID has asserted to the South Carolina Department of Insurance ("SCDI") that the Consent Order restricts Palmetto from underwriting a surety bail bond in excess of ten percent of Palmetto's capital and surplus in all jurisdiction regardless of whether another jurisdiction has enacted a statute or regulation similar to Conn. Gen. Stat. 38a-73[2].

---

[1] A true and accurate copy of the Stipulation and Consent Order is enclosed herewith. Section 3 of the Consent Order provides: "The Respondent shall not in the future underwrite surety bail bonds in excess of ten percent of the Respondent's capital and surplus in any jurisdiction."
[2] Conn. Gen. Stat. 38a-73 provides, in pertinent part: (a) No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten per cent of its paid-up capital and surplus; but, in determining the amount of such risk, no portion thereof that has been

On November 2, 2020, Palmetto submitted an application to the SCDI for approval to underwrite a $750,000 bail bond in South Carolina. The SCDI, through its representative, Michael Hull, approved Palmetto's application to underwrite the bond. Thereafter, by unknown means, it appears that Mr. Hull obtained a copy of the Consent Order and contacted the CID for clarification of the scope of thereof. After contacting the CID, Mr. Hull contacted Palmetto to schedule a meeting with the Palmetto, the CID and the SCDI to discuss the Consent Order. A meeting was held on November 16, 2020 via telephone conference. During the meeting, the CID took the position that the Consent Order prohibited Palmetto from underwriting any bail bond in excess of ten percent (10%) of its capital and surplus in any and every state.

The CID's interpretation of the Consent Order is against public policy, void as an illegal restraint on trade and runs afoul of the Dormant Commerce Clause. The restriction set forth in Conn. Gen. Stat. 38a-73, which is the basis for Section 2 of the Consent Order, applies to insurers doing business in this state, which are under the jurisdiction of Conenticut Statutes and the CID. It is a fundamental precept of constitutional law and notions of state sovereignty that one state may not invade the regulatory jurisdiction of another. By indicating that Palmetto may not underwrite a bond outside of Connecticut unless it complies with a provision of a Consent Order based on a Connecticut statute, the CID is attempting to control extraterritorial conduct outside of Connecticut's boders. "States may not deprive businesses and consumers in other States of 'whatever competitive advantages they may possess' based on the conditions of the local market." (quoting *Brown–Forman*, 476 U.S. at 580, 106 S.Ct. 2080 (citing *Baldwin*, 294 U.S. at 528, 55 S.Ct. 497. *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1173 (10th Cir. 2015), cert. denied, 577 U.S. 1043 (2015). The citizens of South Carolina's choice of bail bondsmen cannot be limited by the impact of a Connecticut statue, where no similar statute exists in South Carolina.

A reasonable interpretation of Section 3 of the Consent Order is that in the event that Palmetto writes a surety bond in excess of ten percent (10%) of its paid-up capital and surplus in any jurisdiction, then Palmetto's license in the State of Connecticut is subject to restriction.

Palmetto respectfully requests that the CID clarify, in writing, to the SCDI the approapriate limit of the scope of the restriction set forth in Section 3 of the Consent Order within seven (7) days of the receipt of this letter. If the CID is unwilling or unable to satisfy this request, then our client has authorized our office to take legal action including the filing of an action for declaratory judgment to clarify the scope of the

---

reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included.

CTDOIFOI000019

Consent Order and filing of a motion for preliminary injunction to prevent the CID from asserting its overbroad interpretation of the restrictions set forth in the Consent Order.

Thank you for your consideration.

Very truly yours,

A. Ryan McGuigan

ARM
Encls

N18246

Exhibit D, Page 26

CTDOIFOI000020



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

December 23, 2020

Attorney A. Ryan McGuigan
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103

Re:   <u>Clarification of Stipulation and Consent Order, Docket No. Mc 20-94</u>

Dear Ryan:

Please accept the following as response to your letter to Commissioner Mais dated December 7, 2020 in which you request that the Connecticut Insurance Department ("Department") clarify the provision of the Stipulation and Consent Order ("Stipulation") entered into by the Department and Palmetto on September 28, 2020, which among other things, restricts Palmetto from underwriting surety bail bonds in excess of ten percent of Palmetto's capital and surplus in "any jurisdiction".

Specifically, you request that the Department clarify that such provision only applies to bonds that Palmetto underwrites within the State of Connecticut, but does not prevent Palmetto from underwriting bonds in excess of the stated limits in any other U.S. jurisdiction that does not have the same limitation as Connecticut.

As related by the Department in a recent call with Palmetto's management, the position that you advocate for is not the one intended in the Stipulation.

Applicable Connecticut law, CGS §38a-73(a) states, in pertinent part, as follows:

> No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten per cent of its paid-up capital and surplus; but, in determining the amount of such risk, no portion thereof that has been reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included.

Although other states may not have the same limitation as Connecticut, or may allow Palmetto to offset in other ways the gross risk on any one bond, the Department only allows the amount at risk to be reduced through reinsurance obtained from an insurer that is authorized or approved to act as a reinsurer in Palmetto's state of domicile. Such statute was enacted in Connecticut to protect the solvency of any insurance company doing business in our State and to protect Connecticut residents, or in the case of an insurer underwriting surety bail bonds, the State of Connecticut by making sure that any insurer operating within this state has sufficient reserves to pay the obligations incurred. In taking into account

whether an insurer maintains adequate capital to support business placed in Connecticut, and its consequent ability to pay its obligations in our state, the Department considers all the operations of such insurer, wherever undertaken, not only the business placed in our state.

In your letter you state that "[a] reasonable interpretation of Section 3 of the Consent Order [the provision restricting the amount of any single surety bail bond that Palmetto is allowed to underwrite] is that in the event that Palmetto writes a surety bail bond in excess of ten percent (10%) of its paid-up capital and surplus in any jurisdiction, then Palmetto's license in the State of Connecticut is subject to restriction". The Department agrees wholeheartedly with your interpretation of the Stipulation, as expressed above. However, contrary to your assertion that such restriction is an illegal restraint on trade, the amount limitation is absolutely essential for the protection of Connecticut policyholders and, in the case of Palmetto and the nature of its business, for the protection of the State of Connecticut itself.

In addition, the Department has become aware that on October 234, 2020, after the effective date of the Stipulation, Palmetto has underwritten a large bond in the amount of $650,000.00 on a risk located in South Carolina. As indicated above, the location of the risk is not relevant in determining solvency issues. The total amount at risk of $650,000.00 exceeds the 10% limit under CGS §38a-73(a) and places the entire company at risk by raising the possibility that Palmetto may become insolvent if the bond becomes due and Palmetto is not immediately able to cover the amount owed.

Because Palmetto has violated the provisions of the Stipulation, pursuant to its terms, Palmetto's authority to write business in Connecticut is hereby immediately reduced. Specifically, as of the date of this communication, a restriction has been placed on Palmetto's license in Connecticut, prior authorization to write fidelity and surety line of business is revoked and the Company may continue only to service existing outstanding surety bonds. The amended license will be mailed to your client.

Palmetto may reapply to the Department to have the line of authority reinstated only upon proof that it will operate in accordance with Connecticut laws.

Sincerely,



Anthony Caporale
Counsel
Connecticut Insurance Department

cc:     Kathy Belfi

CTDOIFOI000017



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

December 30, 2020

Attorney A. Ryan McGuigan
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103

Re:   Clarification of Stipulation and Consent Order, Docket No. Mc 20-94

Dear Ryan:

Please accept the following as response to your letter to Commissioner Mais dated December 7, 2020 in which you request that the Connecticut Insurance Department ("Department") clarify the provision of the Stipulation and Consent Order ("Stipulation") entered into by the Department and Palmetto on September 28, 2020, which among other things, restricts Palmetto from underwriting surety bail bonds in excess of ten percent of Palmetto's capital and surplus in "any jurisdiction".

Specifically, you request that the Department clarify that such provision only applies to bonds that Palmetto underwrites within the State of Connecticut, but does not prevent Palmetto from underwriting bonds in excess of the stated limits in any other U.S. jurisdiction that does not have the same limitation as Connecticut.

As related by the Department in a recent call with Palmetto's management, the position that you advocate for is not the one intended in the Stipulation.

Applicable Connecticut law, CGS §38a-73(a) states, in pertinent part, as follows:

> No stock insurance company doing business in this state shall expose itself to loss on any one risk to an amount exceeding ten per cent of its paid-up capital and surplus; but, in determining the amount of such risk, no portion thereof that has been reinsured in any insurance company that meets the requirements of section 38a-85 or 38a-86 shall be included.

Although other states may not have the same limitation as Connecticut, or may allow Palmetto to offset in other ways the gross risk on any one bond, the Department only allows the amount at risk to be reduced through reinsurance obtained from an insurer that is authorized or approved to act as a reinsurer in Palmetto's state of domicile. Such statute was enacted in Connecticut to protect the solvency of any insurance company doing business in our State and to protect Connecticut residents, or in the case of an insurer underwriting surety bail bonds, the State of Connecticut by making sure that any insurer operating within this state has sufficient reserves to pay the obligations incurred. In taking into account

whether an insurer maintains adequate capital to support business placed in Connecticut, and its consequent ability to pay its obligations in our state, the Department considers all the operations of such insurer, wherever undertaken, not only the business placed in our state.

In your letter you state that "[a] reasonable interpretation of Section 3 of the Consent Order [the provision restricting the amount of any single surety bail bond that Palmetto is allowed to underwrite] is that in the event that Palmetto writes a surety bail bond in excess of ten percent (10%) of its paid-up capital and surplus in any jurisdiction, then Palmetto's license in the State of Connecticut is subject to restriction". The Department agrees wholeheartedly with your interpretation of the Stipulation, as expressed above. However, contrary to your assertion that such restriction is an illegal restraint on trade, the amount limitation is absolutely essential for the protection of Connecticut policyholders and, in the case of Palmetto and the nature of its business, for the protection of the State of Connecticut itself.

In addition, the Department has become aware that on October 23, 2020, after the effective date of the Stipulation, Palmetto has underwritten a large bond in the amount of $650,000.00 on a risk located in North Carolina. As indicated above, the location of the risk is not relevant in determining solvency issues. The total amount at risk of $650,000.00 exceeds the 10% limit under CGS §38a-73(a) and places the entire company at risk by raising the possibility that Palmetto may become insolvent if the bond becomes due and Palmetto is not immediately able to cover the amount owed.

Because Palmetto has violated the provisions of the Stipulation, pursuant to its terms, Palmetto's authority to write business in Connecticut is hereby immediately reduced. Specifically, as of the date of this communication, a restriction has been placed on Palmetto's license in Connecticut, prior authorization to write fidelity and surety line of business is revoked and the Company may continue only to service existing outstanding surety bonds. The amended license will be mailed to your client.

Palmetto may reapply to the Department to have the line of authority reinstated only upon proof that it will operate in accordance with Connecticut laws.

Sincerely,

Anthony Caporale
Counsel
Connecticut Insurance Department

cc:     Kathy Belfi

CTDOIFOI000015

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Thursday, December 31, 2020 9:50 AM |
| **To:** | Ryan McGuigan |
| **Cc:** | Belfi, Kathy |
| **Subject:** | RE: Palmetto |

Hi Ryan,

I have discussed your request with Kathy Belfi, Examination Division Director, and regretfully, after thoughtful consideration, we have reached the conclusion that the action you advocate for is not in the best interest of the State. The prohibition against writing new business for Palmetto, therefore, stands as of 12/30/20.

Very best,

Tony

**From:** Ryan McGuigan [mailto:rmcguigan@rms-law.com]
**Sent:** Thursday, December 31, 2020 8:45 AM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Subject:** Re: Palmetto

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Antonio. I'm on vacation and can't get to this until I return. My client wishes to be compliant with the CT Insurance Department and I have a conference call scheduled for Monday. My client and his insured are asking that they permitted to write bonds over the Holiday weekend. I believe, under the circumstances of COVID and the Holiday week, that this is a reasonable request.

Let me know if you have an objection.

On Dec 30, 2020, at 5:39 PM, Ryan McGuigan <rmcguigan@rms-law.com> wrote:

Sent from my iPad

Begin forwarded message:

> **From:** "Caporale, Antonio" <Antonio.Caporale@ct.gov>
> **Date:** December 30, 2020 at 14:31:41 EST
> **To:** Ryan McGuigan <rmcguigan@rms-law.com>
> **Cc:** "Belfi, Kathy" <Kathy.Belfi@ct.gov>, "Welch, Maura" <Maura.Welch@ct.gov>
> **Subject:** Palmetto

CTDOIFOI000160

Ryan,

I hope you and your family had a good holiday.

Please find attached a copy of the letter responding to your correspondence of December 6 to Commissioner Mais. Original to follow by regular mail.

Very best and happy new year,

Tony

**Anthony Caporale | Counsel**
**State of Connecticut Insurance Department**
**P.O. Box 816 | Hartford, CT 06142-0816**
**Phone: (860) 297-3981 | Email: antonio.caporale@ct.gov**

<image001.gif>
<PalmettoReply1220.pdf>

CTDOIFOI000161



One State Street   Hartford, CT 06103
phone 860.549.1000   fax 860.724.3921
www.romemcguigan.com

A. Ryan McGuigan
E-mail: rmcguigan@rms-law.com
Direct Dial: 860-493-3596

February 9, 2021

**VIA FACSIMLE – (860)566-7410
AND EMAIL**

Andrew N. Mais, Commissioner
State of Connecticut Insurance Department
153 Market Street, 7th Floor
Hartford, CT 06103

> Re:   In the Matter of Palmetto Surety Corp.
> Stipulation and Consent Order/Docket No. MC-20-94
> <u>Application for Reinstatement</u>

Dear Commissioner Mais:

This office represents the respondent Palmetto Surety Corporation ("Palmetto"). Palmetto hereby respectfully requests reinstatement to write new fidelity and surety lines in the State of Connecticut following revocation of such authority by the Insurance Department (the "Department") by letter dated December 30, 2020. In support of this request, Palmetto, through the undersigned counsel, represents the following:

On or about September 28, 2020, Palmetto, an insurer domiciled in South Carolina, entered into a Stipulation and Consent Order with the Department (the "Consent Order," annexed hereto as **Exhibit A**). The Consent Order was precipitated by a finding by the Department that Palmetto had underwritten a surety bond in Connecticut in an amount in excess of ten per cent of Palmetto's paid up capital and surplus, in violation of this jurisdiction's statutory requirements. *Id.* Palmetto, having subsequently satisfied the Department that it now possessed sufficient capital and surplus for the protection of Connecticut residents, agreed that in return for being allowed to continue to write new business in Connecticut, the Respondent would: 1) pay a $5,000 fine; 2) maintain adequate capital and surplus reserves such that Connecticut's statutory requirements were met; and 3) refrain from underwriting surety bail bonds in excess of ten per cent of its capital and surplus. *Id.*

CTDOIFOI000008

On or about October 23, 2020, Palmetto underwrote a bond in the amount of $650,000.00 on a risk in North Carolina. On December 30, 2020, the Department informed Palmetto that because said bond was in an amount in excess of the ten per cent limit of an insurer's capital and surplus reserves in violation of Conn. Gen. Stat. § 38a-73(a), Palmetto was in violation of the Consent Order and its ability to write new business was therefore revoked. *See* Letter from the Department dated 12/30/2020, annexed hereto as **Exhibit B**. The violation arose from Palmetto's misinterpretation of the terms of the Consent Order. The undersigned counsel is now satisfied Palmetto understands its error, has implemented internal controls to prevent future errors, and is prepared to accept the consequence.

In its revocation letter, the Department concluded by advising that should Palmetto be able to prove its ability to operate in accordance with Connecticut laws, it could reapply for reinstatement. Palmetto hereby represents that it can operate within the statutory requirements, based on the following:

- Palmetto's current capital and surplus, based on initial reporting draft financials updated February 3, 2021, which have been submitted to and reviewed by the South Carolina Department of Insurance, totals $7,644,254.76. *See* email from Colleen Handy of Palmetto dated 2/9/2021 with attached Draft Statement of Admitted Assets, Liabilities and Surplus for December, 2020, updated as of 2/3/2021 annexed hereto as **Exhibit C**.

- To ensure compliance with Connecticut law and prevent any further lapses on Palmetto's part such as occurred in 2020, Palmetto shall write no bond over $150,000 without written approval by its President, Scott Willis.

- While Palmetto admits error with respect to its underwriting a bond in excess of its capital and surplus in October, 2020, the available filings did not accurately reflect the amount of Palmetto's reserves. Shortly before Palmetto wrote the $650,000 bond that triggered the Department's revocation letter, in that same month of October, Palmetto received an additional $682,500 in PPP funds for which it had applied the previous April. Therefore, at the time bond was written, Palmetto estimates that its reserves were in fact in the amount of $6,717,702.00. *See* email from Colleen Handy of Palmetto dated 2/9/2021 with attached balance sheets annexed hereto as **Exhibit D**.

Palmetto appreciates the importance of remaining in strict compliance with the laws of the State of Connecticut, reflecting that jurisdiction's mandate to protect its citizens. Going forward, Palmetto will honor its commitments under the Consent Order and such other

requirements the Department chooses to impose if the Department grants this request for reinstatement of its ability to write new business and removal of restrictions on its license.

Very truly yours,

A. Ryan McGuigan

ARM/lab
Encls.
cc:    Anthony Caporale, Esq.  (Via Email only)
       Counsel to the Connecticut Dept. of Insurance

N24940

## Caporale, Antonio

**From:** Caporale, Antonio
**Sent:** Friday, February 26, 2021 8:41 AM
**To:** Ryan McGuigan
**Subject:** RE: Palmetto

Hi Ryan,

Hope you are doing well.

The Department touched base with Palmetto and requested information about controls in place to insure that the issue we had previously does not reoccur.

Once the Financial Examination Division has reviewed Palmetto's response we should be in a position to reinstate their license if everything is deemed satisfactory.

Very best and stay safe,

Tony



**Anthony Caporale | Counsel**
**State of Connecticut Insurance Department**
**P.O. Box 816 | Hartford, CT 06142-0816**
**Phone: (860) 297-3981 | Email:** antonio.caporale@ct.gov

---

**From:** Ryan McGuigan <rmcguigan@rms-law.com>
**Sent:** Thursday, February 25, 2021 4:44 PM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Subject:** Palmetto

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Attorney Caporale,

Palmetto Surety's Annual Statement was submitted to NAIC online today and accepted at 12:00PM. I have also emailed our filing information to our contact at the SCDOI, see below.

CTDOIFOI000181

Our Total Capital & Surplus is **$7,610,147** (a small adjustment to our reserves was made after the last draft we sent 2 weeks ago).

Please let me know if you need anything further from my end.

Ryan

CTDOIFOI000182

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Donnie Mescia <dmescia@palmettosurety.net> |
| **Sent:** | Thursday, February 25, 2021 2:55 PM |
| **To:** | Scott Willis; Welch, Maura |
| **Cc:** | Colleen Handy; Belfi, Kathy; Caporale, Antonio |
| **Subject:** | RE: Palmetto Surety Corporation ("Palmetto") request for reinstatement |
| **Attachments:** | LARGE BOND UNDERWRITING PROCEDURES (001).pdf; 022820 Large Bond Notification.pdf; Connecticut Agent and Underwriting Guide.pdf |

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Good afternoon all,

Please find the following attached as detailed below by Mr. Willis:

1. Large Bond Underwriting Procedure
2. Communication to all Palmetto Surety Agents on large bond procedure
3. Connecticut Agent and Underwriting Guide provided to all Palmetto Surety Agents

Thank you,

# Donnie Mescia

**Chief Operations Officer | Palmetto Surety Corporation**
75 Port City Landing, Suite 130
Mt. Pleasant, SC 29464
p: 843-971-5441 | f: 843-971-5419
w: www.palmettosurety.net
e: dmescia@palmettosurety.net

**From:** Scott Willis <SWillis@palmettosurety.net>
**Sent:** Thursday, February 25, 2021 1:41 PM
**To:** Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Colleen Handy <chandy@palmettosurety.net>; Belfi, Kathy <Kathy.Belfi@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Donnie Mescia <dmescia@palmettosurety.net>
**Subject:** Re: Palmetto Surety Corporation ("Palmetto") request for reinstatement

Dear Ms. Welch,

On behalf of Palmetto Surety and myself, we do appreciate your reconsideration on allowing us to write new policies in your state. As of today, we did send the notification to the state of South Carolina that states if we were permitted to reissue policy in Connecticut, we would comply with Connecticut's rule that we would not write any bonds over our capital and surplus. This includes those bonds with collateral as security, with the understanding that "jurisdiction" in Connecticut means any state we have our authority in. Today we did submit our complete financial filings to the state in order to comply with the regulatory requirements.

In response to your email today, I have listed the following information to your questions and concerns.

Exhibit D, Page 38                                          CTDOIFOI000170

- We have a very strict underwriting process for our agents to submit such requests. All agents must submit an online application for any large bond over the amount of $100,000.00. Once this is received online, it then goes through an underwriting process. No power of authority is provided until the bond is approved. The president's approval occurs after underwriting has approved the bond.
- These instructions are listed on our large bond approval application on our website. We also send out information regarding large bond approvals in our onboarding packet. A Newsletter went out to all agents on 2/28/2020 regarding the large bond approval process.
- Donnie Mescia, our COO will provide documentation of the submission of these requirements in a following email.
- Our internal operations will no longer review any bonds over our capital and surplus from the prior filing date. We will also create a new platform in our online system that will automatically reject the application when a bond amount over our capital and surplus is submitted.

We will no longer accept collateral as security for bonds over our capital and surplus in any state as these bonds will not be approved.


Again, we do thank you for this consideration. If you have any further questions or concerns, please do not hesitate to contact me.


*Scott B. Willis*
CEO
Palmetto Surety Corporation
75 Port City Landing, Suite 130
Mount Pleasant, SC 29464

P: 843-971-5441
F: 843-971-5419
C: 843-701-2817
swillis@palmettosurety.net


This communication and its attachments, if any, may contain confidential and privileged information the use of which by other persons or entities than the intended recipient is prohibited. If you receive this transmission in error, please contact the sender immediately and delete the material from your system.


On Feb 25, 2021, at 11:56 AM, Welch, Maura <Maura.Welch@ct.gov> wrote:

Dear Mr. Willis;

The Connecticut Insurance Department ("CID") has received the attached letter from Attorney Ryan McGuigan dated February 9, 2021 that requests the removal of the restriction that was placed on Palmetto Surety Corporation's Connecticut Certificate of Authority. The letter also provides an update regarding Palmetto Surety Corporation's surplus for the last quarter of 2020 and projected financial information for the year end December 31, 2020.

Palmetto's financial information will be verified once it submits its year-end financial statement that is due to be filed electronically with the NAIC on March 1, 2021.

CTDOIFOI000171

The CID requests additional information to support the assertion regarding the implementation of internal controls to prevent future errors. The letter only lists one control that was put in place requiring written approval from Palmetto's President for bonds over $150,000. Please provide a description of how this control was implemented and explain the following:

* When will the President's approval occur? Does the agent submit the request for approval prior to the placement of the bond?
* How was this new requirement communicated to all bail bond agents?
* Please provide copies of the letters (or email communications) sent to the 80 active agents description the new underwriting requirement.
* Please provide information about the other internal controls implemented.

The CID will evaluate your response when considering your request for reinstatement.

Please respond directly to our Director of Financial Regulation, Kathryn Belfi, at
Kathy.Belfi@ct.gov<mailto:Kathy.Belfi@ct.gov>

Sincerely,

Maura F. Welch, CPA, CFE
Insurance Certified Supervising Examiner
Connecticut Insurance Department
(860) 297-3827

This message and any attachments are from the Financial Regulation Division of the Connecticut Insurance Department and are intended solely for the addressee. The information contained herein is confidential and may be legally privileged or exempt from disclosure pursuant to applicable law. If the reader of this communication is not the intended recipient, you are hereby notified that you have received this communication in error and that any use, review, dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender immediately by e-mail and delete this e-mail and any copy thereof.

<Palmetto - Letter Commissioner 2.9.2021.pdf>

CTDOIFOI000172

**Donnie Mescia**

| | |
|---|---|
| **From:** | Sonya Cromwell |
| **Sent:** | Friday, February 28, 2020 1:57 PM |
| **To:** | Donnie Mescia |
| **Subject:** | FW: Greetings from Palmetto Surety |

**From:** Scott Willis <swillis@palmettosurety.net>
**Sent:** Friday, February 28, 2020 12:16 PM
**To:** Sonya Cromwell <scromwell@palmettosurety.net>
**Subject:** Greetings from Palmetto Surety

View this email in your browser



# PALMETTO SURETY

C O R P O R A T I O N

Where the Agents and Agencies are First and Foremost

## Greetings to all Our Agents

I hope everyone is doing well in the start of 2020. As always, we would like to thank each and every one of you for choosing Palmetto Surety as your bail surety. We enjoyed seeing all our agents in Louisiana and Mississippi last month and look forward to seeing you all within the next few months. I would like to give special thanks and recognition to California and New York for demonstrating what society looks like when you eliminate the surety bail. Our leadership team

1

PSC000779

will be more active in local, state events and political achievements in 2020. For the past three years we have worked hard on a national level to build strong relationships in D.C. to produce facts about our industry. You will begin to see us more active within your states and we will provide separate newsletters for state specific items over the next few weeks.

---

WE ARE

ENGAGED



We are proud at Palmetto Surety to continue with helping our agents reduce expenses and increasing other products for revenue gain. We look forward to sharing this information and abilities as we see you all in our meet and greets across your state.

Palmetto Surety is proud to announce that as of February 1, 2020 we have full staff in our office 24/7 to assist you with your needs. If you were to call after hours to the office line, please press the transfer option to connect to the on-duty staff. We are proud to also announce that our other lines of surety have been accepted in the states of Mississippi and Louisiana. Please visit our website to see what other lines of surety we provide.

---

2

# Please Take Notice

Large Bond Requirements:

We would like to thank everyone for properly submitting large bond approvals through our website. This allows us a quick response to better serve you. Effective March 1, 2020 the following rules will be in place for large bond approvals:

- Applications, Palmetto Promissory Notes, Copies of DL's and indemnitors' proof of employment must be downloaded through the app
- Bonds over $200,000 must be pre-paid through our website
- We recommend that you find a property attorney to assist with liens and title searches

Please stay tuned for email newsletters from our office staff regarding a meet and greet near you.
We look forward to seeing each of you very soon as we travel through each state.

Sincerely,

Scott B. Willis
CEO

  

3

PSC000781

Exhibit D, Page 43



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

March 9, 2021

Attorney A. Ryan McGuigan
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103

Re: <u>In the Matter of Palmetto Surety Corp./Application for Reinstatement</u>

Dear Ryan:

Please accept the following as response to your letter to Commissioner Mais dated February 9, 2021, in which you request that the Connecticut Insurance Department ("Department") reinstate Palmetto Surety Corporation's ("Palmetto") authority to write new Fidelity and Surety products in Connecticut, following its revocation on December 20, 2020 caused by Palmetto's failure to abide by a Stipulation and Consent Order issued by the Department on September 28, 2020, which among other things, restricts Palmetto from underwriting surety bail bonds in excess of ten percent of Palmetto's capital and surplus in "any jurisdiction".

Following your request and the assurances contained in your letter - as well as assurances contained in an email communication from Scott Willis, Palmetto's CEO, to Maura Welch of this Department - the Department is comfortable with the measures put in place by Palmetto to avoid a recurrence of the issue that caused its license restriction and agrees to lift the current restrictions on Palmetto's certificate of authority and to restore its authority to place new Surety and Fidelity business in Connecticut, subject to the following:

- Palmetto shall continue to abide by all the conditions contained in the Stipulation and Consent Order issued in this matter on September 28, 2020.

- Palmetto shall write no bond in excess of $150,000 in any U.S. jurisdiction in which it conducts business without prior written approval of its President and shall comply with all the assurances provided to the Department by email dated February 25, 2021 by Scott Willis.

- Palmetto shall submit a quarterly filing to the Foreign Licensing Unit attesting to all bonds issued in the relevant period and the amount underwritten.

- Palmetto shall not offset in any other ways the gross risk on any one bond issued in Connecticut and is only allowed to reduce the amount at risk

through reinsurance obtained from an insurer that is authorized or approved to act as a reinsurer in Palmetto's state of domicile.

- Palmetto shall account for bonds written in Connecticut in accordance to each bod face value and not reduce such amount by reference to the payment schedule for forfeited bonds currently adopted by the Chief State's Attorney's Office for the collection of forfeitures, as such schedule may be amended from time to time.

In accordance with the conditions outlined above, Palmetto's line of authority is hereby reinstated as of the date of this communication. An amended certificate of authority will be mailed directly to your client as soon as practicable.

Best regards,

Anthony Caporale
Counsel
Connecticut Insurance Department

cc:     Kathy Belfi

CTDOIFOI000007

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Belfi, Kathy |
| **Sent:** | Monday, March 15, 2021 6:46 PM |
| **To:** | Caporale, Antonio |
| **Subject:** | FW: Large Bond for Christopher Madry |
| **Attachments:** | Christopher Madry Large Bond.pdf |

For when we talk

**From:** Michael Shull <mshull@doi.sc.gov>
**Sent:** Thursday, March 11, 2021 1:51 PM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>; Welch, Maura <Maura.Welch@ct.gov>
**Cc:** Ryan Basnett <rbasnett@doi.sc.gov>; Linda Haralson <lharalson@doi.sc.gov>
**Subject:** Fw: Large Bond for Christopher Madry

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Hey Kathy, do you have time tomorrow morning or early next week for a quick call? I just want to update you on a few items involving Palmetto Surety.

Thanks,
Michael

Michael Shull `SC`DOI
Chief Financial Analyst
1201 Main Street, Suite 1000
Columbia, SC 29201
Office: (803) 737-6188

**From:** Dollie Pilson <dpilson@palmettosurety.net>
**Sent:** Wednesday, March 10, 2021 11:29 AM
**To:** Michael Shull <mshull@doi.sc.gov>
**Cc:** Scott Willis <SWillis@palmettosurety.net>
**Subject:** Large Bond for Christopher Madry

WARNING

This is an external email. DO NOT CLICK links or open attachments unless you recognize the sender and know that the content is safe.

Good Morning, Michael

Attached please find the following:

 CTDOIFOI000196

Underwriting Approval Request for Christopher Madry
Copy of Recorded Deed of Trust for Collateral
Clear (Background) Report for Christopher Madry

This bond has been requested by one of our premier agents who has already done the necessary leg work to have this bond approved.

The property is valued at 1.3 million dollars and is situated beachfront on Kure Beach, North Carolina. This bond is fully collateralized and secured by the Deed of Trust.

Once you have had the opportunity to review the attached materials, I would very much appreciate your letting me know your decision.

Thanks you for your consideration.

Best wishes.

*Dollie T. Pilson*

**Risk Control Analyst**
**Palmetto Surety Corporation**
**75 Port City Landing, Suite 200**
**Mt. Pleasant, SC   29464**
**O. (843) 971-5441**
**F. (843) 971-5419**
dpilson@palmettosurety.net

CTDOIFOI000197

## Caporale, Antonio

Hello Ryan,

Hope all is well at your end.

Before we finalize this matter, the Department would like to have a conversation with Palmetto's management, including Mr. Willis, to restate the Department's concerns and clarify again the conditions of any possible reinstatement. Please let me know if you and your client are available for a conference call on one of the following dates/times:

Monday 3/22 at 2:00 pm
Tue 3/23 at 3:30 pm, or
Wed 3/24 at 1:00.

Thanks and take care,

Tony

-----Original Message-----
From: Caporale, Antonio
Sent: Wednesday, March 3, 2021 11:04 AM
To: Ryan McGuigan <rmcguigan@rms-law.com>
Subject: RE: Palmetto

Hi Ryan,

The Financial Examination Division is still conducting its review. I will touch base with you for an update as soon as I know anything in regard.

Best,
Tony

-----Original Message-----
From: Ryan McGuigan <rmcguigan@rms-law.com>
Sent: Wednesday, March 3, 2021 9:22 AM
To: Caporale, Antonio <Antonio.Caporale@ct.gov>
Subject: Palmetto

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Hey Antonio,

CTDOIFOI000192

## Caporale, Antonio

**From:** Caporale, Antonio
**Sent:** Monday, March 29, 2021 2:14 PM
**To:** tplotkin@rms-law.com
**Subject:** Palmetto

Hi Tom,

Hope all is good at your end. Wanted to touch base with you concerning our recent phone conversation with representatives from Palmetto. Could you give me a call today to discuss? I can be reached at 860-816-0559.

Very best,

Tony



**Anthony Caporale | Counsel**
**State of Connecticut Insurance Department**
**P.O. Box 816 | Hartford, CT 06142-0816**
**Phone: (860) 297-3981 | Email: antonio.caporale@ct.gov**

CTDOIFOI000185

**Caporale, Antonio**

| | |
|---|---|
| **From:** | Ryan McGuigan <rmcguigan@rms-law.com> |
| **Sent:** | Monday, March 29, 2021 2:30 PM |
| **To:** | Caporale, Antonio |
| **Subject:** | Palmetto |

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Just spoke with Palmetto. They will have their C&S up to 11 million by Friday. That will cover the $1 million bond.

Ryan

CTDOIFOI000184

## Caporale, Antonio

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Monday, March 29, 2021 2:34 PM |
| **To:** | Ryan McGuigan |
| **Subject:** | RE: Palmetto |

OK, thanks for the info.

Tony

-----Original Message-----
From: Ryan McGuigan <rmcguigan@rms-law.com>
Sent: Monday, March 29, 2021 2:30 PM
To: Caporale, Antonio <Antonio.Caporale@ct.gov>
Subject: Palmetto

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Just spoke with Palmetto. They will have their C&S up to 11 million by Friday. That will cover the $1 million bond.

Ryan

CTDOIFOI000183



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

April 13, 2021

Attorney A. Ryan McGuigan
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103

Re: <u>In the Matter of Palmetto Surety Corp./Application for Reinstatement</u>

Dear Ryan:

Please accept the following as response to your letter to Commissioner Mais dated February 9, 2021, in which you request that the Connecticut Insurance Department ("Department") reinstate Palmetto Surety Corporation's ("Palmetto") authority to write new Fidelity and Surety products in Connecticut, following its revocation on December 20, 2020 caused by Palmetto's failure to abide by a Stipulation and Consent Order issued by the Department on September 28, 2020, which among other things, restricts Palmetto from underwriting surety bail bonds in excess of ten percent of Palmetto's capital and surplus in "any jurisdiction".

Following information that Palmetto has provided a cash infusion of $3m to provide a cushion above $10m of capital and surplus, and upon consideration of your request and the assurances contained in your letter - as well as assurances contained in an email communication from Scott Willis, Palmetto's CEO, to Maura Welch of this Department - the Department is comfortable with the measures put in place by Palmetto to avoid a recurrence of the issue that caused its license restriction and agrees to lift the current restrictions on Palmetto's certificate of authority and to restore its authority to place new Surety and Fidelity business in Connecticut, subject to the following:

- Palmetto shall continue to abide by all the conditions contained in the Stipulation and Consent Order issued in this matter on September 28, 2020.

- Palmetto shall write no bond in excess of $150,000 in any U.S. jurisdiction in which it conducts business without prior written approval of its President and shall comply with all the assurances provided to the Department by email dated February 25, 2021 by Scott Willis.

- Palmetto shall submit a quarterly filing to the Foreign Licensing Unit attesting to all bonds issued in the relevant period and the amount underwritten.

- Palmetto shall not offset in any other ways the gross risk on any one bond issued in Connecticut and is only allowed to reduce the amount at risk through reinsurance obtained from an insurer that is authorized or approved to act as a reinsurer in Palmetto's state of domicile.

- Palmetto shall account for bonds written in Connecticut in accordance to each bod face value and not reduce such amount by reference to the payment schedule for forfeited bonds currently adopted by the Chief State's Attorney's Office for the collection of forfeitures, as such schedule may be amended from time to time.

In accordance with the conditions outlined above, Palmetto's line of authority is hereby reinstated as of the date of this communication. An amended certificate of authority will be mailed directly to your client as soon as practicable.

Best regards,

Anthony Caporale
Counsel
Connecticut Insurance Department

cc:     Kathy Belfi
        Michael Shull

CTDOIFOI000005

# Caporale, Antonio

**From:** Caporale, Antonio
**Sent:** Thursday, May 13, 2021 12:24 PM
**To:** Serafini, Cynthia
**Subject:** RE: Palmetto

Hi Cynthia,

That is correct, the Department was only concerned about the issue of whether the bond would cause Palmetto to be in violation of the prohibition against underwriting a risk above ten percent of the Insurer's paid-up capital and surplus contained in C.G.S. sec. 38a-73(a). Other than that, the Department does not advise about, approve or get involved with the underwriting of individual bonds by insurers.

Tony



**Anthony Caporale| Counsel**
**State of Connecticut Insurance Department**
**P.O. Box 816 | Hartford, CT 06142-0816**
**Phone: (860) 297-3981 | Email: antonio.caporale@ct.gov**

---

**From:** Serafini, Cynthia <Cynthia.Serafini@ct.gov>
**Sent:** Thursday, May 13, 2021 12:06 PM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Subject:** RE: Palmetto

Dear Tony,
Thank you for your assistance in this matter. As I indicated, the issue in my case is that the bonds specifically contained prohibitions against using them in combination with any other surety. The Insurance Department was concerned with the limit that Palmetto could write which was capped at $1 million. Based on our conversation, my understanding is that the Insurance Department was not objecting or prohibiting Palmetto from providing part of a bond if the surety company was amenable to that, but if the specific language in the bond prohibited it then it would not be valid. Thus, your letter to Attorney McGuigan only required that Palmetto stayed at or below the $1 million limit, and the Department does NOT approve the conditions of the bond.
Is this correct? I want to accurately convey the Department's position to the Court this afternoon.
Thank you.
Cynthia

*Cynthia S. Serafini*
Senior Assistant State's Attorney
Waterbury State's Attorney's Office
400 Grand Street

17

CTDOIFOI000214

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Friday, May 21, 2021 2:06 PM |
| **To:** | Stegall, Amy |
| **Cc:** | Swan, Kurt; Pomerleau, Andre |
| **Subject:** | RE: Cabrera bond documentation |

Amy,

We do not review or give advice about individual bonds, nor are we qualified to give recommendations about procedural aspects of writing a bond.

Tony

**From:** Stegall, Amy <Amy.Stegall@ct.gov>
**Sent:** Friday, May 21, 2021 1:56 PM
**To:** Caporale, Antonio <Antonio.Caporale@ct.gov>
**Cc:** Swan, Kurt <Kurt.Swan@ct.gov>
**Subject:** FW: Cabrera bond documentation

Hi Tony,

Andre received this email.

Thanks.

Amy Stegall
Program Manager
Fraud & Investigations

(860) 297-3933
Facsimile (860) 297-3872

**From:** Pomerleau, Andre <Andre.Pomerleau@ct.gov>
**Sent:** Friday, May 21, 2021 1:36 PM
**To:** Stegall, Amy <Amy.Stegall@ct.gov>
**Subject:** FW: Cabrera bond documentation

**From:** Doolittle, Paul <Paul.Doolittle@jud.ct.gov>
**Sent:** Thursday, May 20, 2021 10:49 AM
**To:** Pomerleau, Andre <Andre.Pomerleau@ct.gov>
**Cc:** Sandler, Karen <Karen.Sandler@jud.ct.gov>; Dagostine, Ralph <Ralph.Dagostine@jud.ct.gov>
**Subject:** FW: Cabrera bond documentation

Hey Andre,

 CTDOIFOI000199

A situation came up yesterday where 2 bondsmen split a bond (1 million each as described below) and I was wondering if we need to do anything further.

When you get a moment, can you review our conversation below and see if we are missing anything? I don't think we are, but I figured it wouldn't hurt to ask.

Thanks!

Paul

---

**From:** Sandler, Karen <Karen.Sandler@jud.ct.gov>
**Sent:** Thursday, May 20, 2021 8:12 AM
**To:** Leigh, Laura <Laura.Leigh@jud.ct.gov>; Dagostine, Ralph <Ralph.Dagostine@jud.ct.gov>
**Cc:** Doolittle, Paul <Paul.Doolittle@jud.ct.gov>; Haas, Richard <Richard.Haas@jud.ct.gov>
**Subject:** RE: Cabrera bond documentation

Laura-

Thank you for this follow up. A new power needs to be issued because the previous POA dated May 11, 2021 is no longer valid since that bond was released.

Also, for clarity, it there are two bondsman each posting $1 million, there should be two bond forms, one for each bondsman and each for $1 million. They need to complete the bottom part of the form, sign it and attach their own POA for $1 million to that surety bond.

Since it was very late in the day, the Marshals could not hold up transportation to wait for the other bondsman. Thank you for bringing him in today.

Karen

---

**From:** Leigh, Laura
**Sent:** Wednesday, May 19, 2021 5:33 PM
**To:** Dagostine, Ralph ; Sandler, Karen
**Cc:** Doolittle, Paul ; Haas, Richard
**Subject:** Cabrera bond documentation

Hello,
Just to follow up on my conversation with Karen a short while ago, after a hearing this afternoon, Judge Iannotti revoked the $2 million surety bond and the defendant was taken into custody. Immediately thereafter, bondsman Jonathan Gonzalez appeared at the clerk's office counter stating that he planned to post the bond for Palmetto Surety Company. Upon further inquiry by Dan Corica, Assistant Clerk, Gonzalez planned to post $1,000,000 of the total bond using the Palmetto power and the original bondsman, George Igartura would stay as surety for the remaining $1,000,000 using the Financial Casualty power, thus splitting the bond.

Before considering whether or not the Court would approve the splitting of the bond in this case, we determined that Igartura was not present at the clerk's office counter to provide a new appearance bond form and power and nothing more could be done today. We agreed to transport the defendant to court tomorrow and advised Gonzalez that all appropriate paperwork had to be prepared and ready for review at that time.

Laura A. Leigh
Deputy Chief Clerk

CTDOIFOI000200

Waterbury Judicial District/G.A. 4
400 Grand Street
Waterbury, CT 06702
(203)236-8110
Laura.Leigh@jud.ct.gov

**From:** 040t0039pr@jud.ct.gov <040t0039pr@jud.ct.gov>
**Sent:** Wednesday, May 19, 2021 3:55 PM
**To:** Leigh, Laura <Laura.Leigh@jud.ct.gov>
**Subject:** Attached Image

CTDOIFOI000201

## Caporale, Antonio

| | |
|---|---|
| **From:** | Caporale, Antonio |
| **Sent:** | Tuesday, May 18, 2021 10:00 AM |
| **To:** | Belfi, Kathy; Mais, Andrew; Carson, Jim; Swan, Kurt; Hershman, Joshua; Stegall, Amy |
| **Cc:** | Kosky, Jared; Mendoza, Lady |
| **Subject:** | RE: FYI News article on Complaint against bail bonds agent & Palmetto |

We have no insurance statute or regulation prohibiting the practice.

Tony

**From:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Sent:** Tuesday, May 18, 2021 9:50 AM
**To:** Mais, Andrew <Andrew.Mais@ct.gov>; Carson, Jim <Jim.Carson@ct.gov>; Swan, Kurt <Kurt.Swan@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Hershman, Joshua <Joshua.Hershman@ct.gov>; Stegall, Amy <Amy.Stegall@ct.gov>
**Cc:** Kosky, Jared <Jared.Kosky@ct.gov>; Mendoza, Lady <Lady.Mendoza@ct.gov>
**Subject:** RE: FYI News article on Complaint against bail bonds agent & Palmetto

Please confirm with Tony, but that was my understanding. Tony?

**From:** Mais, Andrew <Andrew.Mais@ct.gov>
**Sent:** Tuesday, May 18, 2021 9:49 AM
**To:** Belfi, Kathy <Kathy.Belfi@ct.gov>; Carson, Jim <Jim.Carson@ct.gov>; Swan, Kurt <Kurt.Swan@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Hershman, Joshua <Joshua.Hershman@ct.gov>; Stegall, Amy <Amy.Stegall@ct.gov>
**Cc:** Kosky, Jared <Jared.Kosky@ct.gov>; Mendoza, Lady <Lady.Mendoza@ct.gov>
**Subject:** RE: FYI News article on Complaint against bail bonds agent & Palmetto

To be clear, any regs/statutes prohibiting stacking bonds would not be ours?

Andrew N. Mais
Commissioner, Connecticut Insurance Department
(he/him/his)
Notice: For the latest information, resources, and guidance related to coronavirus (COVID-19), visit ct.gov/coronavirus

**From:** Belfi, Kathy <Kathy.Belfi@ct.gov>
**Sent:** Tuesday, May 18, 2021 9:43 AM
**To:** Mais, Andrew <Andrew.Mais@ct.gov>; Carson, Jim <Jim.Carson@ct.gov>; Swan, Kurt <Kurt.Swan@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Hershman, Joshua <Joshua.Hershman@ct.gov>; Stegall, Amy <Amy.Stegall@ct.gov>
**Cc:** Kosky, Jared <Jared.Kosky@ct.gov>; Mendoza, Lady <Lady.Mendoza@ct.gov>
**Subject:** RE: FYI News article on Complaint against bail bonds agent & Palmetto

From a financial perspective we were aware of the fact that a bond had been split between 2 companies. They continue to be in compliance with our law. Obviously no details so to the nature of the bond.

CTDOIFOI000206

**From:** Mais, Andrew <Andrew.Mais@ct.gov>
**Sent:** Tuesday, May 18, 2021 9:39 AM
**To:** Carson, Jim <Jim.Carson@ct.gov>; Swan, Kurt <Kurt.Swan@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Hershman, Joshua <Joshua.Hershman@ct.gov>; Stegall, Amy <Amy.Stegall@ct.gov>
**Cc:** Belfi, Kathy <Kathy.Belfi@ct.gov>; Kosky, Jared <Jared.Kosky@ct.gov>; Mendoza, Lady <Lady.Mendoza@ct.gov>
**Subject:** RE: FYI News article on Complaint against bail bonds agent & Palmetto

Adding folks. See highlights below. Where are we on this?

Andrew N. Mais
Commissioner, Connecticut Insurance Department
(he/him/his)
Notice: For the latest information, resources, and guidance related to coronavirus (COVID-19), visit ct.gov/coronavirus

-----Original Message-----
**From:** Carson, Jim <Jim.Carson@ct.gov>
**Sent:** Tuesday, May 18, 2021 9:33 AM
**To:** Swan, Kurt <Kurt.Swan@ct.gov>; Caporale, Antonio <Antonio.Caporale@ct.gov>; Mais, Andrew <Andrew.Mais@ct.gov>; Hershman, Joshua <Joshua.Hershman@ct.gov>; Stegall, Amy <Amy.Stegall@ct.gov>
**Subject:** FYI News article on Complaint against bail bonds agent & Palmetto

In Today's Waterbury Rep-Am. -Jim
"During a court hearing on the motion Thursday in front of Iannotti, Attorney Austin Ryan McGuigan, who represented the bondsman, said in this particular case, both insurance companies were notified the bonds would be stacked and they didn't have an issue with the arrangement. He also spoke with the Connecticut Insurance Department, which regulates the bonds industry, and they didn't reject it, according to McGuigan."


Prosecutor seeks to have Waterbury murder suspect's $2 million bond revoked

WATERBURY — A murder suspect who police say gunned down a 22-year-old man outside a Chase Avenue convenience store was released from jail in recent days after he posted a $2 million bond, but a judge is expected to rule this week whether that bond will be revoked.

At the heart of the possible revocation is whether two bail bonds companies are allowed to "stack" bonds on top of each other, as was the case in the posting of a bond for 22-year-old Justin Cabrera, who is accused of killing Kayson Langhorn on July 18 in the area of Cooke Street and Chase Avenue.

Langhorn climbed from an SUV, walked to the driver's side of a Toyota parked in the lot and was shot multiple times by a man sitting inside the car, who police identified as Cabrera. Cabrera was arrested in October and was unable to post his bond until last week.

Two companies, including one based in South Carolina, combined two, $1 million bonds together to reach the rarely issued bond amount, allowing Cabrera to get out of jail. But a prosecutor is urging a judge to reverse that move, arguing it should never have been allowed. Judge Frank A. Iannotti may make a decision on the issue Wednesday when Cabrera is due back in Waterbury Superior Court.

Cabrera, a suspected member of the 960 gang, was free on bonds of more than $600,000 in connection with multiple crimes in Waterbury at the time of the killing in July, including a case in which police say they found an AK-47 style rifle and other guns inside a condo on Thomaston Avenue. He's also a suspect in a drive-by shooting outside a housing complex in the city's Brooklyn section in 2017, a case which is still pending in court.

CTDOIFOI000207

Other bonds, including a $250,000 for an out-of-state case, bring the total amount he's posted closer to $2.85 million. If Cabrera decided to abscond and can't be found by authorities, the bond companies would be on the hook to pay that money to the state.

After Cabrera posted the $2 million bond, Senior Assistant State's Attorney Cynthia S. Serafini filed a motion to have that bond revoked, which would have returned Cabrera to jail.

In that motion, she argued that Palmetto Bail Bonds and a Texas-based company, Financial Casualty and Surety, are licensed to give a maximum surety of $1 million each. But instructions on the bond paperwork show that, legally, bondsmen aren't allowed to "stack" or combine bonds together and, if they do, the bonds are voided, according to the motion.

During a court hearing on the motion Thursday in front of Iannotti, Attorney Austin Ryan McGuigan, who represented the bondsman, said in this particular case, both insurance companies were notified the bonds would be stacked and they didn't have an issue with the arrangement. He also spoke with the Connecticut Insurance Department, which regulates the bonds industry, and they didn't reject it, according to McGuigan.

"How does the insurance department, how do they get to circumvent their own law?" Iannotti asked him. "It's under their authority that you can't stack these powers of attorneys."

Serafini said she had emails from the department's attorney which showed the department was concerned about whether Palmetto would be over the maximum bond amount they could issue, not if the bonds could be stacked.

"The insurance department does not advise, approve or get involved with the underlying writing of the individual bonds by insurers," Serafini said Thursday. "Therefore, if there is a prohibition on that bond that limited them from stacking, then the insurance department had nothing to do with that."

Serafini said she also noted the "premium" or what was paid to the bondsman by the defendant, wasn't filled in on the form when the bond was posted. When large bonds are posted, bondsmen often ask for property or extra money as collateral, should the defendant fail to show for court, Iannotti said.

"It would seem inconceivable to me on a total bond of $2 million that a smart bonds person wouldn't ask for some type of collateral to secure his bond should Mr. Cabrera, or anybody else in a hypothetical situation, flee the jurisdiction," he said.

But there was no collateral that was required for the bonds, McGuigan said, though the bonds company provided a deed to a property as part of the transaction. Iannotti deferred making a ruling on whether to revoke the bond, but he may make a decision when Cabrera returns to court Wednesday.

While Cabrera is free, his location is being tracked electronically and he's under home confinement.

-----Original Message-----
From: Carson, Jim
Sent: Monday, May 17, 2021 5:31 PM
To: Mais, Andrew <Andrew.Mais@ct.gov>; Joshua Hershman (Joshua.Hershman@ct.gov) <Joshua.Hershman@ct.gov>; Swan, Kurt <Kurt.Swan@ct.gov>; Antonio Caporale (Antonio.Caporale@ct.gov) <Antonio.Caporale@ct.gov>
Subject: Complaint against bail bonds agent & Palmetto

Hello,
I am forwarding a complaint I received against a bail bondsman.
Jim

Exhibit D, Page 60

CTDOIFOI000208