UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---

ANNA CURRY                                                                 No. 3:21 cv 00221 (SRU)

VS.

PALMETTO SURETY CORPORATION,
24/7 BAIL BONDS, LLC, WILLIAM SOBOTA, and
JERRY CAO                                                                   December 5, 2023

## SECOND AMENDED COMPLAINT

Plaintiff Anna Curry, through her undersigned counsel, hereby files this Second Amended Complaint and alleges as follows:

### PARTIES

1. Plaintiff Anna Curry ("Plaintiff") is an individual who resides at 4939 Cameron Valley Parkway in Charlotte, North Carolina.

2. Defendant Palmetto Surety Corporation ("PSC") is a South Carolina corporation which maintains a principal place of business at 75 Port Landing, Suite 130 in Charleston, South Carolina. PSC is in the business of providing bail surety bonds. PSC regularly transacts business in Connecticut and otherwise has sufficient minimum contacts with Connecticut so as to be subject to its jurisdiction over it.

3. Defendant 24/7 Bailbonds, LLC ("24/7") is a Connecticut limited liability company which maintains a principal place of business at 615 East Main Street in Meriden, Connecticut. 24/7 is in the business of providing bail surety bonds and serving as a Connecticut agent for out-of-state providers of bail surety bonds. At all relevant times, 24/7 held surety bail bond license 2258058 issued by the Department of Insurance of the State of Connecticut.

4. Defendant William J. Sobota ("Sobota") is an individual who maintains an address at 615 East Main Street in Meriden, Connecticut. Sobota is a principal of 24/7.

5. Defendant Jerry Cao ("Cao") is an individual who, upon information and belief, maintains an address at 6 Village View Terrace in Meriden, Connecticut. At all relevant times, Cao held surety bail bond license 2409567 issued by the Department of Insurance of the State of Connecticut.

6. PSC, 24/7, Sabota and Cao are collectively referred to as "Defendants".

7. Defendants and Plaintiff are referred to as "Parties".

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because at least one Defendant resides in this district and the majority of the acts and omissions giving rise to the claim occurred in the district.

## NATURE OF THE CASE

10. On or about January 9, 2020, PSC, through its agent, 24/7, posted a bond in the penal sum of $6,000,000.00 to secure the conditional release of the defendant in the matter of State v. Dulos, D.N. CR-20-0241180-T (the "Bond").

11. The Bond commanded a premium of $420,150.00, and, in particular, a premium deposit of $148,000.00 (the "Premium Deposit").

12. On or around January 9, 2020, Plaintiff paid $147,000.00 of the Premium Deposit to 24/7 as agent for PSC by means of two cashier's checks (the "Plaintiff's Premium Deposit"). Plaintiff hand delivered these checks to Sobota in Farmington, Connecticut. Cao acknowledged receipt of the Plaintiff's Premium Deposit.

13. On January 28, 2020, PSC moved to revoke the Bond on the grounds that it had exceeded the limitations of risk set by Conn. Gen. Stat. § 38a-73.

14. The Bond was void ab initio by virtue of the fact that PSC acknowledged that it had violated Conn. Gen. Stat. § 38a-73.

15. Defendants have provided no benefit to Plaintiff.

16. Plaintiff has demanded the return of Plaintiff's Premium Deposit.

17. Despite demand, Defendants have retained Plaintiff's Premium Deposit.

## FIRST COUNT – UNJUST ENRICHMENT
(Against All Defendants)

18. Paragraphs 1 through 17 above are incorporated herein by reference.

19. Defendants have been unjustly enriched by their retention of Plaintiff's Premium Deposit.

20. It would thwart the interests of justice if Defendants were allowed to retain Plaintiff's Premium Deposit.

## SECOND COUNT -- CONVERSION
(Against All Defendants)

21. Paragraphs 1 through 20 above are incorporated herein by reference.

22. Defendants have misappropriated $147,000.00 of Plaintiff's' cash, namely Plaintiff's Premium Deposit.

23. At all relevant times, title to Plaintiff's Premium Deposit was retained by Plaintiff.

24. Despite demand, Defendants have failed or refused to return any of Plaintiff's Premium Deposit.

25. By misappropriating Plaintiff's Premium Deposit, Defendants have exercised dominion and control over Plaintiff's personal property without justification.

26. Defendants' actions were willful and deliberate.

27. Defendants have converted at least $147,000.00 of Plaintiff's cash.

28. Plaintiff has been directly and proximately damaged by Defendants' actions.

## THIRD COUNT--CIVIL THEFT PURSUANT TO CONN. GEN. STAT. § 52-564
(Against All Defendants)

29. Paragraphs 1 through 28 above are incorporated herein by reference.

30. Defendants stole Plaintiff's property, specifically, Plaintiff's Premium Deposit.

31. Defendants knowingly received and concealed property stolen from Plaintiff, specifically, Plaintiff's Premium Deposit.

32. As a direct and proximate result of Defendants' actions, Plaintiff has incurred damages.

33. Defendants have violated Conn. Gen. Stat. § 52-564.

34. Pursuant to Conn. Gen. Stat. § 52-564, Plaintiff is entitled to treble the damages caused by Defendants' actions.

## COUNT FOUR – BREACH OF IMPLIED CONTRACT
(As to all Defendants)

35. Paragraphs 1 through 34 above are incorporated herein by reference.

36. In the alternative, on January 9, 2020, the Plaintiff and Defendants entered into an implied contract to provide a bail bond in the amount of $6,000,000.00 to allow the defendant's release from custody throughout the pendency of his criminal case.

37. Pursuant to said implied contract, the Plaintiff agreed to pay the $147,000 bond premium deposit requested by Defendants and sign a $3,000,000 "Promissory Note" and "Financial Statement & Indemnity Agreement" to serve as a Co-Indemnitor if the bond was forfeited, and Defendants agreed to post the bond.

38. The Defendants breached said implied contract when on January 28, 2020, they moved to revoke the bond and return the defendant to jail before the defendant's trial had commenced.

39. Defendants admitted that they were in violation of Connecticut law by exceeding the limitation of risks established by C.G.S. §38a-73. The Defendants' bail bond was void *ab initio* in that it violated C.G.S. §38a-73.

40. Despite repeated demand made of Defendants, they have neglected and refused to return the bond premium paid for the illegal bond as aforesaid and continue to wrongfully withhold Plaintiff's premium deposit of $147,000.

41. Defendants' breach of the implied contract as aforesaid has caused loss and damage to the Plaintiff.

### COUNT FIVE – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(As to all defendants)

42. Paragraphs 1 through 41 above are incorporated herein by reference.

43. The conduct and agreements between the parties as described in Count One and Count Four in the alternative implied a covenant of good faith and fair dealing between the parties.

44. The Defendants' failure to provide a legal bail bond for the release of the defendant throughout the pendency of his trial while accepting a bond premium deposit from the Plaintiff of $147,000.00 and Promissory Note for $3,000,000.00 constitutes a breach of the implied covenant of good faith and fair dealing.

45. As a result and proximate cause of the Defendants' breach of its covenant of good faith and fair dealing, the Plaintiff has suffered loss and damage.

**COUNT SIX – FRAUDULENT MISREPRESENTATION**
(As to all defendants)

46. Paragraphs 1 through 45 above are incorporated herein by reference.

47. The Defendants represented to Plaintiff that they had the legal ability and authorization to enter into said $6,000,000.00 bail bond to induce payment of $147,000.00 from Plaintiff.

48. The Defendants representations as set forth herein were false and were known to be false to Defendants when they made them.

49. The Plaintiff relied upon said representations to her detriment and was injured as a result, having paid a bail bond premium of $147,000.00 to Defendants for a bond that Defendants backed out of after 20 days.

**COUNT SEVEN – BREACH OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")**
(As to all defendants)

50. Paragraphs 1 through 49 above are incorporated herein by reference.

51. The conduct of the Defendants Palmetto Surety Corporation and 24/7 Bail Bonds LLC as aforesaid is a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. §42-110(a) et. seq.

52. The Defendants' conduct as foresaid was done in the conduct of trade or commerce as bail bonding companies, by entering into a contract to issue a bail bond which they knew was far beyond the scope of their authority. Defendants acted deceptively to induce Plaintiff to pay $147,000.00 for a bail bond that Defendants were not legally qualified to provide.

53. The Plaintiff has given notice to the Attorney General and the Commissioner of Consumer Protection as required by C.G.S. §42-110g(c).

## COUNT EIGHT – CIVIL FORGERY
(As to all Defendants)

54. Paragraphs 1 through 53 above are incorporated herein by reference.

55. On January 9 and 10 of 2020, Plaintiff provided two cashiers checks to Defendant William J. Sobota totaling $147,000 as the requested bond premium deposit for the bail bond. Plaintiff was given no paperwork or receipt for the $147,000 bond premium payment. Plaintiff was not asked to pay additional bond premium nor presented with paperwork regarding additional bond premium.

56. Defendants forged the signature of Plaintiff on a document entitled Unpaid Premium Agreement that stated $272,150.00 of additional premium would be paid in 15 installments beginning on February 9, 2020. Plaintiff had no agreement with Defendants to pay additional bond premium beyond the $147,000.00 premium she paid.

57. Defendants forged Plaintiff's signature on the Unpaid Premium Agreement presented to the Court in their Counterclaim (doc.#52) in furtherance of their actions to make an illicit bond appear legal, to attempt to justify the illicit retention of Plaintiff's

58. $147,000, and to attempt to take additional monies from Plaintiff for an illegal business transaction they induced Plaintiff into.

59. The Plaintiff has and will be damaged by said forgery.

60. The Defendants' conduct as aforesaid constitutes a civil forgery in violation of C.G.S. §52-565.

PRAYER FOR RELIEF

1. Compensatory damages in the amount to be determined at trial (all counts);

2. With regard to the Second Count, punitive damages:

3. With regard to the Third Count, treble damages pursuant to C.G.S § 52-564.

4. With regard to the Eighth Count, double damages pursuant to C.G.S. §52-565.

5. Interest pursuant to Conn. Gen. Stat § 37-3a(a);

6. Attorney's fees;

7. Costs; and

8. Such other and further relief as the Court deems just and proper.

        Respectfully submitted,

        **PLAINTIFF,**
        **ANNA K. CURRY**

        By: /s/ *Andrew M. Zeitlin*
           Joette Katz (ct30935)
           Andrew M. Zeitlin (ct21386)
           Alison P. Baker (ct28136)
           Shipman & Goodwin LLP
           300 Atlantic Street, Third Floor
           Stamford, CT  06901-3522
           Tel. (203) 324-8100
           Fax (203) 324-8199
           E-mail: azeitlin@goodwin.com
           Her Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December 2023, a copy of the foregoing was filed electronically via operation of the Court's CM/ECF Electronic Filing System. A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF Electronic Filing System or by mail to anyone unable to accept electronic filing as indicated on the Notice. Parties may access this filing through the Court's CM/ECF System.

By: /s/ *Andrew M. Zeitlin*
Andrew M. Zeitlin (ct21386)