UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNA K. CURRY | : | NO. 3:21-CV-00221 (SRU) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| PALMETTO SURETY CORPORATION, | : | |
| 24/7 BAIL BONDS, LLC, WILLIAM | | |
| SOBOTA, and JERRY CAO | : | |
| *Defendants* | : | JANUARY 2, 2024 |

### REPLY TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants Palmetto Surety Corp. (**"PSC"**), 24/7 Bail Bonds, LLC (**"24/7"**), William Sobota and Jerry Cao (collectively, the **"Defendants"**) hereby file this reply to Plaintiff's Supplemental Memorandum in Support of Motion for Summary Judgment dated December 19, 2023 (Doc. 175) (**"Supp. Mem."**).

**A.      Plaintiff Cannot Prevail on Her CUTPA Claim**

**1.      Plaintiff Has Not Suffered an Ascertainable Loss from an Alleged Deceptive Act of Defendants.** Plaintiff argues that the Defendants have violated the Conn. Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq (**"CUTPA"**) in "two key ways" in that 1) their conduct satisfies the "cigarette rule;" and 2) that they have engaged in a pattern and practice of similar conduct. Supp. Mem. Her argument is fatally flawed in that it is premised on the fallacy that the Defendants issued the Bond in question to Plaintiff.

The Bond was issued to Fotis Dulos; Plaintiff was not a party to the Bond. Plaintiff has acknowledged this fact herself: Plaintiff did not understand any provision of the documents she signed for the Defendants created an obligation or duty owed to her by the Defendants. Facts, ¶

1

70.¹ Plaintiff did not sign the Bond Application, or any other application for bail bond. Id., ¶ 78. Plaintiff understood that the bail bond was for the benefit of Dulos. Id., ¶ 71. The Plaintiff's payment of $147,000.00 to the Defendants as part of the initial bond premium was paid on behalf of Dulos. None of the defendants asked Plaintiff to pay the bond premium from her own funds; she made the payment voluntarily. Facts, ¶ 73. Plaintiff did not discuss with Dulos or anyone else whether she would be reimbursed the $147,000.00, nor were there any discussions whether the $147,000.00 was a gift to Dulos. Id., ¶ 80. Plaintiff had no expectation of being paid back by Dulos. Id., ¶ 74. In contrast, Plaintiff understood that Dulos would be responsible for the payment of the remaining bond premium. Id., ¶ 80. The Plaintiff does not represent Dulos' estate and has no standing to maintain a legal claim on behalf of the estate. Id., ¶ 75.

In order to prevail on a claim under CUTPA, the plaintiff must establish that she, herself, has suffered an "ascertainable loss of money or property." Conn. Gen. Stat. § 42-110g(a); Pointe Residential Builders BH, LLC v. TMP Construction Group, LLC, 213 Conn. App. 445, 459 (2022); Parnoff v. Aquarion Water Co., 188 Conn. App. 153, 180 (2019). Plaintiff advanced partial funds, on Dulos' behalf, for Dulos to secure his release from jail on bond. Dulos was released from jail on bond, until he took his own life. "The ascertainable loss requirement is a threshold barrier [that] limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief…" (Internal citations, quotation marks omitted.). Parnoff v. Aquarion Water Co., *supra*. If the Plaintiff cannot establish an ascertainable loss, the Court need go no further in its CUTPA analysis. Parnoff v. Aquarion Water Co., *supra*, 188 Conn. 183 n. 17 ("We need not reach the issue of whether there was a genuine issue of material fact as to whether the

---

¹ "Facts" refers to Defendants' Local Rule 56(a)(1) Statement of Undisputed Material Facts submitted in support of Defendants' Motion for Summary Judgment dated July 11, 2023 (Doc. 126-1).

2

defendants' conduct constituted an unfair or deceptive practice because we have determined that the plaintiff failed to allege and demonstrate an ascertainable loss.").

Plaintiff gave or loaned $147,000.00 to Dulos so he could obtain the Bond. Plaintiff made the payment to the Defendants acting as Dulos' agent. If Plaintiff wants to recover her money, she should look to Dulos' estate, not the Defendants. Simply put, the Plaintiff has not suffered an ascertainable loss at the hands of the Defendant sufficient to give rise to a claim under CUTPA, and the Defendants are entitled to judgment.

  **2.**   **<u>Defendants Did Not Engage in Unscrupulous Conduct</u>.** Should the Court deem it necessary to further consider Plaintiff's CUTPA claim, it will find that the material facts demonstrate that the Defendants conduct does not amount to a violation of CUTPA. Try as she might, Plaintiff has not established that the Defendants engaged in any conduct that was immoral, unethical, oppressive, or unscrupulous such to constitute a CUTPA violation. To the contrary, the only evidence in the record is that the Defendants, in good faith, believed Palmetto was validly issuing bonds that were in compliance with its own domiciled state's regulatory requirements for capital and surplus, which cannot be seen as sufficiently meeting the requirements of Connecticut's "cigarette rule".

The Plaintiff has produced no evidence to even suggest that, on January 9, 2020, the Defendants knew that they were issuing the Bond in violation of Connecticut law. The Bond was issued in accord with Palmetto's long-standing business practices approved by its domicile state, the South Carolina Department of Insurance (**"SCDOI"**), and in a manner consistent with its conduct in writing bonds in Connecticut for the previous four years. The Court may recall that, at oral argument on Defendants' Motion to Dismiss held on October 13, 2021, Plaintiff asked for permission to conduct discovery to demonstrate that Defendants knew that they couldn't write

the Bond under Connecticut law. After a year and a half of discovery and the production of thousands of documents and communications by Defendants, the Plaintiff has produced *nothing* to counter the fact that Defendants acted in good faith when issuing the Bond to Mr. Dulos.

Plaintiff has *not* satisfied the "cigarette rule" necessary to establish an actionable CUTPA violation.

> It is well settled that [the Connecticut] Supreme Court has adopted the criteria set out in the so-called cigarette rule by the Federal Trade Commission for determining when a practice is unfair: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . (Internal quotation marks omitted.) Ulbrich v. Groth, 310 Conn. 375, 409-10, 78 A.3d 76 (2013).

Parnoff v. Aquarion Water Co., *supra*, 188 Conn. App. 180-81. "Although all three criteria do not need to be satisfied to support a finding of unfairness …a key element of CUTPA is that the conduct involve some level of aggravated behavior." (Citations, internal quotations omitted) LPP Mortgage Ltd. v. Underwood Towers L.P., 205 Conn. App. 763, 835-36 (2021) (Court finds conduct of defendants in mortgage foreclosure action involving diversion of income, unauthorized payments to vendors, payment of excessive and improper management fees, violations of HUD guidelines, and similar improper financial transactions, "while occasionally in bad faith or reckless, did not rise to the level of being immoral, unethical, oppressive or unscrupulous. Accordingly, the court denies liability on the CUTPA count.").[2]

---

[2] References to the facts constituting the "occasionally in bad faith or reckless" conduct of defendant are found in the findings of the trial court, adopted by the Supreme Court and attached

4

The Plaintiff relies on the Conn. Department of Insurance's ("**CDI**") finding, *after* issuance of the Bond, that Palmetto's issuance of bonds, in accordance with the capital and surplus regulatory laws of South Carolina, its domiciled state, violated Conn. Gen. Stat. § 38a-73.[3] Not only do these findings arise after the issuance of the Bond, but the findings do not address the Dulos Bond in question, which was a fully discharged liability at the time the Conn. Department of Insurance issued its findings.[4]

Plaintiff argues that the CDI's finding should be applied *ex post* facto so she may recover her loan/gift to Dulos; but the alleged statutory violation does not per se give rise to a finding that the Defendants' conduct constituted an "established concept of unfairness" at the time the bond was written in any event. Absent an express legislative provision that the violation of a consumer protection statutory scheme constitutes a CUTPA violation, the violation of a statute does not automatically satisfy the cigarette rule.[5] *See* Naples v. Keystone Building & Development Corp., 295 Conn. 214, 229 (2010) (in action for breach of construction contract and violation of New Home Warranties Act, Conn. Gen. Stat. § 47-116 et seq., no CUTPA violation found without some evidence of fraud or unscrupulous conduct).

"In the absence of aggravating unscrupulous conduct, mere incompetence does not by itself mandate a trial court to find a CUTPA violation." Naples v. Keystone Building &

---

as an appendix to its published decision at 205 Conn. App. 777, 795-96, 798-99, 801-08, 811-12.

[3] Palmetto first learned of the CDI's concerns with the Bond upon being notified by the SCDOI on Jan. 22, 2020. Facts, ¶ 85. Based upon the SCDOI's inquiries, Palmetto understood that the CDI's concerns centered on the collateral posted by Dulos and relied upon by Palmetto when it issued the Bond. Facts, ¶¶ 86-92.

[4] See Facts, ¶ 98.

[5] Section 38a-73 is *not* a consumer protection statute. As set forth in a December 30, 2020, letter from Anthony Caporale, Counsel for the CDI, to Attorney Ryan McGuigan, counsel for PSC, the CDI acknowledged that Conn. Gen. Stat. § 38a-73(a) "was enacted to protect the solvency of any insurance company doing business in our State and to protect Connecticut residents, or in the case of an insurer underwriting surety bail bonds, the State…" Facts, ¶ 110.

Development Corp., *supra*. In Naples, the Supreme Court affirmed the trial court's finding that defendant contractor did not violate CUTPA as a result of defects found following the construction of plaintiff's new home caused by poor workmanship, even though the defendant contractor was found liable under the New Home Warranties Act.

> We conclude that the trial court's determination that the defendants' conduct did not amount to a CUTPA violation was not clearly erroneous, notwithstanding their unworkmanlike construction of the plaintiffs' home. In rejecting the plaintiffs' CUTPA claim, the trial court reasonably could have relied on testimony that [defendant] and one of his subcontractors had attempted multiple times, albeit unsuccessfully, to remedy the damage and problems about which the plaintiffs had complained. Indeed, [plaintiff] testified that [defendant] had expressed his desire to resolve the construction dispute without resort to litigation. In the absence of aggravating unscrupulous conduct, mere incompetence does not by itself mandate a trial court to find a CUTPA violation.

Naples v. Keystone Building & Development Corp., *supra*, 295 Conn. 229; *see also* Joseph General Contracting, Inc. v. Couto, 317 Conn. 565, 592 (2015) ("In order for any individual liability to attach under CUTPA, someone must knowingly or recklessly engage in unfair or unscrupulous acts, as contemplated by the statute, in the conduct of a trade or business.").

In the present case, the Defendants were acting in good faith when they issued the Bond to Dulos. Whether the Defendants be deemed "incompetent" or merely acting in reliance upon their course of business conduct as approved by the Sate of South Carolina and as accepted by the State of Connecticut for years prior to the issuance of the Bond, the same holds true: their conduct clearly did not rise to the level of unscrupulous behavior as required for the establishment of a CUTPA violation.

B.  **Plaintiff Is Not Entitled to Any Recovery Against Defendant Sobota or Cao.**

Plaintiff argues that defendant William Sobota, owner of defendant 24/7 Bail Bonds, LLC, and defendant Jerry Cao, an independent contractor working with 24/7 and Palmetto, are liable to Plaintiff "for their own wrongful conduct." Supp. Mem., p. 9. Because Plaintiff cannot

satisfy necessary elements of the claims she brings against Sobota and Cao, these defendants are entitled to summary judgment.

As a general proposition, Sobota and Cao concede that, if the Court were to find that they committed or participated in tortious activity, they may be held liable for their acts. *See* Ventres v. Goodspeed Airport, LLC, 275 Conn. 105, 142 (2005). The same does not hold true, however, for Plaintiff's CUTPA claim, in that a good faith belief in the truth of the misrepresentation alleged – here, that Palmetto and 24/7 were authorized to issue the Bond – can preclude individual liability under CUTPA. Joseph General Contracting, Inc. v. Couto, *supra*, 317 Conn. 590. Nonetheless, for the same reasons Plaintiff cannot prevail on her CUTPA claim; *see* argument at § A (2), *infra*, pp. 3-6; Plaintiff cannot prevail against Sobota and Cao on her tort claims.

All of Plaintiff's claims are premised on the allegation that when the Bond was issued, the Defendants knew that they were not authorized to issue the Bond. The evidence before the Court clearly demonstrates, however, that the Defendants were at all times operating on the good faith belief that they were authorized to issue the Bond. Thus, Plaintiff cannot prevail on her claim of fraudulent misrepresentation. Complaint, Count Six.[6] The Plaintiff has not produced any evidence that the Defendants converted Plaintiff's property[7] or engaged in statutory theft,[8] because the Defendants' acceptance and retention of the payments made on behalf of Dulos were authorized upon issuance of the Bond. Aetna Life & Cas. Co. v. Union Trust Co., 230 Conn. 779, 790 (1994) (conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights"); Sullivan v.

---

[6] References to "Complaint" are to Plaintiff's Second Amended Complaint dated Dec. 5, 2023 (Doc. 174).
[7] Complaint, Count Five.
[8] Complaint, Count Six.

Delisa, 101 Conn. App. 605, 619-20, cert. denied, 283 Conn. 908 (2007) (elements of civil theft same as elements to prove conversion with additional element of intent).

Plaintiff's claims of breach of implied contract and implied covenant of good faith and fair dealing also fail because they rely on the allegation that the Defendants failed "to provide a legal bail bond for the release of the defendant throughout the pendency of his criminal case." Second Amended Complaint, Count Four, ¶ 36 (breach of implied contract); Count Five, ¶ 44 (implied covenant of good faith and fair dealing). However, the Defendants did just that: they issued a bond and secured Dulos' release throughout the pendency of his case. It was only after the fact that Defendants learned that Connecticut would no longer allow Palmetto to use collateral as reinsurance for amounts in excess of ten percent of its capital and surplus.

Regarding Plaintiff's CUTPA claim, as argued above, Plaintiff cannot prevail for the reasons previously stated. *See* Argument, § A, pp. 1-6, *infra*. To the extent that the Court considers the CUTPA claim to remain viable, Sobota and Cao should not be held individually responsible in that they possessed a good faith belief in that Palmetto and 24/7 were authorized to issue the Bond. *See* Joseph General Contracting, Inc. v. Couto, *supra*, 317 Conn. 590.

### D.    CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Doc. 126-12); Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 155), Memorandum in Opposition to Motion for Summary Judgment (Doc. 127) and Memorandum of Law in Opposition to Motrin for Summary Judgment (Doc. 135), all of which are incorporated herein by reference, the Plaintiff's Motions for Summary Judgment should be denied, and the Defendants' Motion for Summary Judgment should be granted.


PALMETTO SURETY CORPORATION, 24/7 BAILBONDS, LLC, WILLIAM SOBOTA and JERRY CAO,
By Their Attorneys,
ROME MCGUIGAN, P.C.

By:  /s/ Joseph B. Burns
     Joseph B. Burns
     Fed. Bar No. ct00403
     Crumbie Law Group, LLC
     100 Pearl Street, 12th Floor
     Tel. (860) 263-3614
     Fax: (860) 760-0308
     Email: jburns@crumbielaw.com

- and –

PALMETTO SURETY CORPORATION,

By:  /s/ Barrett Brewer
     Barrett Brewer
     Brewer Law Firm, LLC
     637 Hobcaw Bluff Dr., Ste 200
     Mt. Pleasant, SC 29464
     Tel: 843-224-2416
     Fax: 843-779-7456
     Email: barrett@brewerlawfirmsc.com

## CERTIFICATE OF SERVICE

     I hereby certify that on January 2, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Joseph B. Burns
     Joseph B. Burns