**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANNA K. CURRY, | : | NO. 3:21-CV-00221 (SRU) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PALMETTO SURETY CORPORATION, | : | |
| 24/7 BAIL BONDS, LLC, WILLIAM | : | |
| SOBOTA, and JERRY CAO | : | |
| Defendants. | : | MAY 15, 2024 |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF**
**PLAINTIFF'S MOTION TO STRIKE JURY CLAIM DATED APRIL 28, 2023**

Plaintiff Anna Curry ("Curry") hereby respectfully moves this Honorable Court to

reconsider its ruling granting (and denying) in part "115 Motion to Strike Defendants' Jury

Claim" on March 28, 2024. (ECF 185).

On April 28, 2023 Plaintiff Curry filed her "Motion to Strike Defendants' Jury Claim".

(ECF 114). The Court granted the Motion to Stike the Defendants' Jury Claim for the counts

brought in Plaintiff's Original Complaint including Unjust Enrichment, Conversion, and Civil

Theft.

The Court denied Plaintiff's Motion to Strike the Jury Claim for the counts brought in her

Amended Complaint including: violations of the Connecticut Unfair Trade Practices Act

(CUTPA), Fraudulent Misrepresentation, Breach of Implied Covenant of Good Faith and Fair

Dealing, Breach of Implied Contract, and Civil Forgery. In denying her Motion, the Court held:

"If subsequent pleadings raise 'new issues…they are not covered by an initial [jury demand]

waiver.'" *Rosen v. Dick, 639 F.2d 82, 94 (2d Cir. 1980).* Although the original complaint had put

the defendants 'on notice of the underlying facts', it did not put the defendants on notice of each

'basic legal theory [] …upon which [Curry] s[eeks] relief.'", referencing *Contra Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973). (Doc.185)

Plaintiff respectfully requests this Honorable Court to reconsider its ruling denying the Motion to Strike Defendants' Jury Claim for each of the counts in the Amended Complaint for the following reasons:

## I.    INTRODUCTION

Firstly, Plaintiff respectfully argues this Honorable Court overlooked critical legal requirements established by the *Rosen* and *Lanza Courts* when denying Plaintiff's Motion to Strike Defendants' jury claim for the additional counts in the Amended Complaint.

In *Rosen,* the Court provided a detailed analysis of what constitutes a "new issue" that revives a parties' jury claim when the jury demand was previously waived.  The Court noted that determining whether a "new issue" has been raised by a subsequent pleading "[has] forced…courts to examine more closely what issues have already been raised in order to decide whether a new issue is presented," and such a determination must "turn on a careful weighing of the particular pleadings and claims presented."  *Rosen v. Dick,* 639 F.2d at 95 (2d Cir. 1980). Based on a careful weighing of the pleadings here and in accordance with the legal parameters set forth by the Rosen Court, Plaintiff submits there were no "new issues" raised in the Amended Complaint that were not previously pled.

*Rosen's* analysis of what constitutes a "new issue" emphasized that "the term 'issue' means something more than the evidence offered and the legal theories pursued," and *Rosen* significantly turned upon the Courts's requirements established by *Lanza* and other Circuit Courts that preceded it. *Rosen v. Dick,* 639 F.2d at 94, 96 (2d Cir. 1980).  In *Lanza,* the Court granted the plaintiff's motion to strike defendants' jury claim by concluding that:

[Defendant] had been put on notice of the underlying facts and basic legal theory – fraud - upon which plaintiffs sought relief, and *the character of the suit was in no way changed by the amendments.* Even assuming, however, that the issues of willfulness and falsity as of a particular date might have been "new" had they not been alleged in the original complaint, *we think that complaint is sufficiently broad to be fairly construed as including both these issues."* (emphasis added)

*Contra Lanza v. Drexel & Co,* 479 F.2d at 1311 (2d Cir. 1973).

*Lanza* established that the legal requirements to determine whether a "new issue" has been raised that will revive a prior jury waiver include whether it changed "the character of the suit" and whether the prior pleadings were "sufficiently broad" to encompass it. Plaintiff submits Defendants were fully put on notice through the broadly pleaded Original Complaint and Counterclaim pleadings of the "underlying facts and basic legal theory" upon which Plaintiff sought relief – Defendants' admitted violation of C.G.S §38a-73, and their willful and deliberate acts violating that law to illicitly obtain and withhold Plaintiff's money. There were no "issues" brought forward by the Amended Complaint because the "basic legal theory" and "character of the suit was in no way changed by the amendments." The prior pleadings were "sufficiently broad to be fairly construed as including" the claims in the Amended Complaint. Therefore, Defendants' jury waiver at prior stages of the pleadings was not revived by the Amended Complaint.

Secondly, Plaintiff asks the Court to consider that she will be significantly prejudiced by Defendants' untimely jury demand as she was denied the benefit of knowing early in the litigation that the case would be tried to a jury, and therefore has been prevented from preparing a litigation strategy in support of a jury trial. *Rosen v. Dick,* 639 F.2d at 94 (2d Cir. 1980),

In support thereof, Plaintiff represents the following.

## II.    PROCEDURAL HISTORY

The following procedural history reflects that Defendants had multiple opportunities to elect a jury trial prior to April 2023 for the same issues that have been present from inception of the case, but Defendants failed to do so.

Plaintiff filed her Complaint on February 23, 2021. (ECF - 1). The named Defendants were Palmetto Surety Corporation, 24/7 Bailbonds, LLC, William Sabota and Jerry Cao. Her Complaint broadly alleged that Defendants knowingly violated C.G.S §38a-73a when they posted an illegal $6,000,000 bail bond ("Bond") in return for $147,000 in premium money from Plaintiff; that Defendants moved to revoke the Bond 20 days later due to their acknowledgment of violating Connecticut law with the Bond; that Defendants have refused to return Plaintiff's premium money paid for the illegal Bond; and that Defendants knowingly, willfully and deliberately misappropriated, stole, and concealed Plaintiff's stolen property by illicitly receiving and retaining the $147,000 she paid for the illegal Bond. The Complaint contained three counts against all Defendants: (1) unjust enrichment, (2) conversion and (3) civil theft pursuant to Conn. Gen. Stat §52-564.

Plaintiff's Prayer for Relief in her Original Complaint included compensatory damages, punitive damages, treble damages pursuant to Conn. Gen. Stat. §52-564, interest pursuant to Conn. Gen. Stat. §37-3a(a), attorneys fees, costs, and such other relief as the Court deems just and proper.  Plaintiff did not make a jury demand.

Defendants filed a Motion to Dismiss the Complaint on April 16, 2021. (ECF-18) Plaintiff filed her Memorandum in Opposition to Defendants' Motion to Dismiss on May 6,

2021. (ECF -20),  Defendants filed their Reply to Plaintiff's Opposition on May 20, 2021. (ECF -21), and Plaintiff filed a Sur-Reply on June 2, 2021 (ECF-24).

Plaintiff commenced discovery shortly thereafter and submitted Requests for Production to all Defendants' in June 2021.  Plaintiff's discovery included, in part, an extensive Connecticut Department of Insurance (CTDOI) Freedom of Information Act (FOIA) response that was returned on November 30, 2021 and shared with all parties.  The November 30, 2021 FOIA response included correspondence between the CTDOI and Defendants detailing 1) the Defendants' violation of Connecticut insurance law when they posted the Bond, and 2) their continued violations of Connecticut insurance law after repeated warnings and suspension by the Department. The FOIA correspondence referenced the Connecticut regulations invoked by the Insurance Commissioner to suspend Defendants' insurance license with the Commissioner finding that "the continued operation of the insurer….may be hazardous to…the general public". Conn. Reg. §38a-8-104(b)(2).

On December 21, 2021, the Court denied Defendants' Motion to Dismiss without prejudice. (ECF – 48).  Defendants then filed their Answer and Affirmative Defenses on January 10, 2022. (ECF - 52).  In their Answer, Defendants' asserted three affirmative defenses: (1) doctrine of unclean hands, (2) collateral estoppel and (3) failure to state a claim upon which relief can be granted. (ECF 52).   Defendants did not file a jury demand with their Answer.

Defendants also filed a Counterclaim against Plaintiff on January 10, 2022 that alleged similar issues against her as Plaintiff's Complaint alleged against Defendants. The Counterclaim brought three Counts against Plaintiff for: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, and (3) unjust enrichment. (ECF 52).  Defendants did not file jury demand for their Counterclaim against Plaintiff.

On January 25, 2022, Plaintiff filed her Answer to Defendants' Counterclaims for unjust enrichment, breach of contract, and breach of implied covenant of good faith and fair dealing (ECF 53). Plaintiff asserted an affirmative defense, in part, that Defendants' claims were "barred on account of their prior breach of any putative agreement with Plaintiff." (ECF 53, p. 4). Plaintiff further asserted an affirmative defense, in part, stating "[a]s Detailed in Plaintiff's February 23, 2021 complaint, Defendants' claim is barred by the operation of the doctrine of unclean hands." (ECF 53, p. 4). Defendants did not file a jury demand in response to Plaintiff's Answer.

On May 2, 2022, after several more months of discovery had ensued (including nine depositions of the Defendants), the Defendants filed a Motion to Amend their Counterclaim by Consent to remove Palmetto Surety Corporation as a counterclaim plaintiff. (ECF 69). The Motion was granted by the Court, with an order to file an Amended Answer with the counterclaims as a second docket entry. (ECF 70). Defendants elected not to file a jury claim at that time either.

Approximately one year later, Plaintiff filed her Motion to Amend/Correct her Complaint on March 6, 2023. (ECF- 107). No new parties were added. Defendants did not object to Plaintiff's Motion to file her Amended Complaint. The Court granted Plaintiff's motion to amend on March 14, 2023. (ECF-110). Plaintiff's Amended Complaint was thereafter filed on March 14, 2023 as a separate docket entry. (ECF- 111).

The Amended Complaint included five additional Counts intentionally based on the same "general area of dispute", including the same set of facts, the same "basic legal theory", and same allegations of misconduct as set forth in the Original Complaint: Defendants' admitted violation of CGS 38a-73 when posting the Bond; their willful and deliberate acts to

misappropriate Plaintiff's premium money; and Defendants knowingly receiving and concealing stolen property from Plaintiff. The Counts included: (4) breach of implied contract, (5) breach of implied covenant of good faith and fair dealing, (6) fraudulent misrepresentation, (7) breach of Connecticut Unfair Trade Practices Act (CUTPA) and (8) civil forgery. (ECF-111). Plaintiff did not make a jury demand.

Defendants did not challenge the legal sufficiency of the claim's Plaintiff set forth in the Amended Complaint. The Defendants also did not request any additional time in the Scheduling Order to conduct further discovery to address the additional counts brought by Plaintiff in her Amended Complaint because there were no new "issues" brought forward by the Amended Complaint.

Defendants' filed their Answer, Affirmative Defenses and Counterclaim on April 21, 2023 with a jury demand. Pursuant to Federal Rules of Civil Procedure Rule 12, Defendants' Answer was due on or before April 4, 2024. The 14-day window for an allowable jury claim was therefore April 18, 2024. No request for an extension of time to file their Answer was submitted to the Court. (ECF- 114). Thus, the jury claim was filed outside the permissible pleadings window. Thereafter on April 28, 2023, Plaintiff immediately filed her Motion to Strike Defendants' untimely jury demand. (ECF 115).

Defendants' late Answer asserted the same Affirmative Defenses to Plaintiff's Amended Complaint, namely: (1) unclean hands, (2) collateral estoppel, (3) failure to state a claim upon which relief can be granted. (ECF 114). Defendants did not assert any additional affirmative defenses in their Answer to Plaintiff's Amended Complaint filed on April 21, 2023. Defendants 24/7 Bail Bonds, LLC and Jerry Cao reasserted Three Counterclaim Counts for (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing and (3) unjust enrichment.

(ECF 114). Neither Defendants Palmetto Surety nor William Sobota asserted counterclaims against Plaintiff. [1]

All parties filed their respective Motions for Summary Judgments and responses between June 2023 and September 2023. On October 5, 2023, Plaintiff requested Oral Argument on all Summary Judgment motions. (ECF 163) The Court granted Plaintiff's request for Oral Argument on October 23, 2023 and scheduled the hearing for November 28, 2023. (ECF 168, 169) The Court also scheduled Plaintiff's Motion to Strike Defendants' Jury Demand to be heard at the November, 28, 2023. (ECF 169). Due to extensive argument devoted to the summary judgement motions during the November 28, 2023 hearing, there was no time allocated to arguing the Motion to Strike Defendants' Jury Claim during the hearing. However, Plaintiff's then counsel did state for the record that Plaintiff assumed there would be no jury trial given that the Motion to Strike Defendants' Jury Claim was unopposed. Defendants' counsel did not respond. (See Transcript of proceedings, ECF 177, p. 87: 18-22).

Defendants did not object to the Motion to Strike Defendants Jury Claim during the oral arguments or at any time since the motion was filed in April 2023. More importantly, Defendants have provided no explanation for their untimely jury claim. On March 28, 2024 the Court granted Plaintiff's Motion to Strike Defendants Jury Claim in part. (ECF 185).

Plaintiff now moves this Honorable Court to reconsider its denial of Plaintiff's Motion to Strike Defendants' untimely jury demand for claims including Breach of CUTPA, Fraudulent Misrepresentation, Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Implied Contract, and Civil Forgery.

---

[1] While the heading of Defendants' Counterclaims names 24/7 Bail Bonds, LLC and Jerry Cao as counterclaimants, paragraph 1 of the First Count of the Counterclaims confusingly describes Palmetto Surety Company as a "defendant/counterclaim plaintiff". (Doc. 114).

## III. STANDARD OF REVIEW

Local Rule of Civil Procedure 7(c) permits a party to file a motion for reconsideration within seven days of the filing of the decision from which the party seeks relief. D. Conn. Local R. Civ. P. 7(c). Nevertheless, Local Rule 7(c) suggests that motions for reconsideration are disfavored, advising that a motion for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." Id.

Moreover, in the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995). The District of Connecticut's Local Rules require that such a motion include "a memorandum setting forth concisely the matters or controlling decisions which the movant believes the Court overlooked." D. Conn. L. R. 7(c)(1); see also New England Health Care Emps. Welfare Fund v. iCare Mgmt., LLC, 792 F. Supp. 2d 269, 285 (D. Conn. 2011). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court...." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (cleaned up).

## IV. GOOD CAUSE EXISTS TO CONSIDER PLAINTIFF'S DELAYED MOTION FOR RECONSIDERATION

Plaintiff respectfully requests the Court consider Plaintiff's delayed Motion for Reconsideration because she was not represented by counsel at the time the Court's decision on Plaintiff's Motion to Strike was filed. Specifically, on March 25, 2024 and prior to the Court's decision, Plaintiff's previous counsel's Motion to Withdraw as counsel was granted. (ECF 183).

Plaintiff was entered as proceeding pro se as of March 28, 2024. (ECF. 186). Without any legal training, experience or familiarity with the local rules of this Court, Plaintiff was unable to file a timely motion to reconsider.  Plaintiff was not represented by counsel until April 8, 2024. (ECF 187).

Additionally, as undersigned counsel was in the process of reviewing this file and case in order to familiarize himself with the facts and procedural history, Plaintiff learned on April 22, 2024 about a separate action filed by Defendant Palmetto Surety Company against Defendants Sobota, 24/7 Bailbonds LLC, and Sobota Enterprises, LLC on March 14, 2024 in Connecticut State Court. The action is entitled <u>Palmetto Surety Corporation v. Sobota, William</u> *et al*, bearing Docket Number  NNI-CV-24-5017007-S. The action included a Pre-Judgment Remedy (PJR) Application by Palmetto for $5 million of Sobota, 24/7 and Sobota Enterprises' assets, with a PJR hearing scheduled for April 29, 2024. The April 29th hearing date required Plaintiff and her new counsel to act swiftly and devote significant time to take steps to intervene in order to protect Plaintiff's ability to recover from Defendants.  Palmetto's action is not dissimilar to Plaintiff's causes of action here as Palmetto seeks damages for "questionable bonds" sold by Sobota and 24/7 and unpaid forfeited bonds. Palmetto has asserted claims for: unjust enrichment, conversion, theft, civil theft, fraud and violations of CUTPA in the newly filed state action.

Weighing the above, Plaintiff respectfully believes there is good cause for the Court to consider the delayed submission of this motion for reconsideration.

## V.　　LEGAL ARGUMENT

### a.　　Plaintiff's Amended Complaint Included No "New Issues" that Would Revive Defendants' Jury Waiver, as Interpreted by *Lanza, Rosen,* and Other Circuit Courts

Defendants' jury demand is untimely because Defendants waived their right to a jury when filing their Answer to Plaintiff's Original Complaint and their Counterclaim against Plaintiff, and Plaintiff's Amended Complaint raised no new "issues" to these prior pleadings that were not covered by Defendants' original jury waiver. An amended or supplemental complaint does not revive the right to demand a jury trial unless the amendment changes the issues framed in the original pleadings, *Contra Lanza v. Drexel & Co*., 479 F.2d at 1311 (2d Cir. 1973); *Bank of India v. Handloom House (India) Ltd.,* 629 F. Supp. 281, 281 (S.D.N.Y. 1986).

In *Lanza*, the plaintiffs amended their complaint to add that the defendants violated another statute which was not included in their original complaint, Section 17(a) of the Securities Act of 1933, and newly demanded punitive damages based on the alleged violation of that additional statute. The defendant then filed an answer demanding a jury trial based on the amended complaint, with application for a jury trial to the district court, and the district court denied the application. *Lanza v. Drexel,* 479 F.2d at 1311 (2d Cir. 1973). Even with the addition of a new statute that plaintiff alleged defendant had violated, the Court found "...the plaintiff's amendment added no new issues: the same conduct and the same allegedly false documents constituted the basis for any claim under Rule 10b-5, Section 17(a), or common law fraud." *Id.*

As another example, in *Walton v Eaton Corp*., 563 F.2d 66 (3d Cir. 1977) (en banc), the Third Circuit explained that even when new facts are pled in an amended complaint, it is not necessarily sufficient to raise a new "issue" that revives a jury claim:

> [u]nder *Lanza,* the allegation that Mrs. Walton had suffered emotional and mental injury would not constitute a 'new issue.' In the language of *Lanza,* the addition of that allegation did not change the 'basic issue' or the 'general area of dispute,' *i.e.,* whether Eaton discriminated against Mrs. Walton while she was in the company's employ. The second complaint here concerned the 'same conduct' on the part of Eaton as the first complaint, *i.e.,* that Eaton discriminatorily discharged Mrs. Walton; that Eaton employees harassed her on the job; and that Eaton discriminated against her with respect to pay, promotions, and opportunities to obtain educational benefits. Moreover, the addition in this case of the

allegation that Mrs. Walton suffered 'mental and emotional injury' is analogous to the amendment in *Lanza* which alleged for the first time that the defendants had acted willfully. Both 'amendments' pleaded facts which had not been alleged in the previous complaints, but neither raised a 'new issue,' since they did not change the 'basic issue' in the case or the 'general area of dispute.'

*Id.*

The legal requirements articulated by the *Lanza* court as to what constitutes whether a new "'issue'" has been raised that will revive a prior jury waiver were further analyzed in *Rosen v. Dick,* 639 F.2d at 94 (2d Cir. 1980). The *Rosen* Court held:

First, we stress that the term 'issue' means something more than the evidence offered and the legal theories pursued, although these are pertinent factors. In *Cataldo v. E.I. du Pont de Nemours & Co.,* 39 F.R.D. 305, 308 (S.D.N.Y.1966), the court asked whether, '[d]espite the fact that the underlying evidentiary facts are arguably substantially similar, the ultimate issue for decision is different.' Furthermore, as explained by the Ninth Circuit, 'the presentation of a new *theory* [of recovery] does not constitute the presentation of a new *issue* on which a jury trial should be granted.' *Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir. 1974) (emphasis in original); *see Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 620 (9th Cir. 1979), *cert. denied,* 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980); *Guajardo v. Estelle,* 580 F.2d 748, 752-53 (5th Cir. 1978). A legal theory incorporates issues of law which do not concern the jury, whereas only factual questions raise the possibility of a jury trial. *Shore v. Parklane Hosiery Co., supra,* 565 F.2d at 819.

*Rosen v. Dick,* 639 F.2d at 94 (2d Cir. 1980)

The Court referenced cases where "plaintiffs invoked additional legal principles, as in *Lanza*, but added no new factual issues to their cases," and no new issues were determined to have been raised that revived a jury claim. For example, in *Las Vegas Sun, Inc. v. Summa Corp*., 610 F.2d 614, 620 (9th Cir. 1979), *"*a complaint alleging conspiracy in restraint of trade under the Sherman Act, 15 U.S.C. § 1, was amended to include claims under the Clayton Act, 15 U.S.C. § 19, and under Nevada common law. But the court refused to grant a jury trial, ruling that all the issues "turn on the same matrix of facts.... [T]he factual allegations underlying all of its claims are that the charged corporations and individuals conspired to terminate their

advertising accounts with the Sun for an anticompetitive purpose." *Rosen v. Dick,* 639 F.2d at 95 (2d Cir. 1980).

Further discussing the Lanza's court's findings, the Rosen Court stated: "*Lanza's* phrase, 'the same general issues,' is broad enough to encompass 'the basic legal theory' and 'the character of the suit.' *Lanza, supra,* 479 F.2d at 1310. On the other hand, when the parties are the same before and after an amended pleading, it is difficult to show that a new issue has been raised. Usually, the initial jury demand (or waiver) will put the other parties on notice that a jury (or the court) will be trying 'all issues relating to [the] general area of dispute.' *Id*. *Thus, the issues of fraud in Lanza, bad faith in Trixler, and conspiracy in Las Vegas Sun were not changed by amendments which added extra details or new legal headings*." Rosen v. Dick, 639 F.2d at 96 (2d Cir. 1980). (emphasis added)

Here, Plaintiff's additional Counts in her Amended Complaint fall within the legal parameters set forth by the Circuit Courts and did not change the underlying facts or "issues relating to [the] general area of dispute" of the pleadings. Therefore, no "new "issues" were raised by the Amended Complaint that fell outside of the Defendants' original jury waiver.

As in *Lanza, Trixler,* and *Sun,* Plaintiff incorporated in her Amended Complaint the addition of another statute that she alleged the Defendants' violated, the Connecticut Unfair Trade Practices Act, C.G.S. §42-110 ("CUTPA"), based *solely* on the Defendants' violation of C.G.S. §38a-73 and their conduct surrounding the violation C.G.S. §38a-73, all of which was outlined in the Original Complaint pleadings. The addition of the violation of the CUTPA statute is not a "new issue" and could be considered nothing more than the addition of a new "new legal heading." Rosen v. Dick, 639 F.2d at 96 (2d Cir. 1980).

To further explain, in Plaintiff's Original Complaint filed February 23, 2021, Plaintiff asserted the following issues: that **"PSC acknowledged that it had violated Conn. Gen. Stat. §38a-73"** (ECF 1, p. 3 # 13), that **"Defendants have provided no benefit to Plaintiff"** (ECF 1, p. 3 # 15), that **"despite demand, Defendants have retained Plaintiff's money"** (ECF 1, p,4, #17), **"Defendants have been unjustly enriched by their retention of Plaintiff's"** money (ECF 1, p. 4, #19), that **"Defendants have *misappropriated $147,000 of Plaintiff's cash"*** (ECF 1, p.4 # 22); that **"Defendants actions *were willful and deliberate*"** (ECF 1, p. 5 # 26), and that ***"Defendants stole Plaintiff's property"*** (ECF 1, p. 5 #30) and ***"Defendants knowingly received and concealed property stolen from Plaintiff"*** (ECF1, p. 5 #31).  (Emphasis added) The issues and conduct outlined here are the same as that which applies to a CUTPA claim and are broad enough to include the basis for a CUTPA violation:  unfair conduct, deceptive conduct, and/or reckless indifference.

Additionally, the details of the violation of CUTPA claim in the Amended Complaint references the same facts and issues as set forth in the Original Complaint (ECF 1, #1-17), including the same "knowing[]", "willful" and "deliberate" conduct of the Defendants detailed therein (ECF 1, #18-34). The CUTPA claim stated, in part, that the Defendants "knew" the $6 million bond was "far beyond the scope of their authority" by law to post, and that Defendants acted "deceptively" in posting a bail bond that they were not legally qualified to provide.  (ECF-111, p. 7, # 52.)

Put simply, before the Defendants Answered Plaintiff's Original Complaint, they were well aware of the sweeping, bad-faith nature of the allegations that Plaintiff was asserting against them, and Defendants elected not to request a jury trial.  No new issue was raised with the Breach of CUTPA claim that would fall outside of the Defendants' original jury waiver. See

*Rosen v. Dick*, 639 F.2d at 94 ("if the purportedly new issues are simply artful rephrasings of existing issues, the original waiver will be enforced, for the party has already considered and forfeited his right to a jury").

Moreover, Plaintiff's inclusion of a Fraudulent Misrepresentation claim in her Amended Complaint is not a new issue that contemplated any new facts, any new conduct. or any new theories that were not raised by the Original Complaint pleadings. (See *Lanza v. Drexel*, 479 F.2d at 1311 (2d Cir. 1973) ("[t]he willfulness and falsity as of a particular date merely clarified 'the same general issues' raised in the original complaint). Again, Curry broadly placed the Defendants on notice of the "character of the suit" and specific issues in her Original Complaint: alleging that Defendants had acknowledged that they were in violation of C.G.S §38a-73a on the Bond (ECF 1, p. 3, #14) and that their actions were knowing, "*willful and deliberate*" (ECF 1, p. 5 # 26), including that they *"knowingly received and concealed property stolen from Plaintiff"* (ECF 1, p. 5 #31).[2] (emphasis added).

The intentional nature of Defendants' violation of the law to obtain and withhold Plaintiff's money, therefore, was not a new issue raised by Plaintiff's addition of a Fraudulent Misrepresentation count in the Amended Complaint – "[t]he Defendants represented to Plaintiff that they had the legal ability and authorization to enter into said $6,000,000 bail bond to induce payment of $147,000 from Plaintiff" – and Defendants original jury waiver should apply to the Fraudulent Misrepresentation claim (ECF 111, p. 7, #47)

---

[2] The Original Complaint language was worded to encompass fraudulent misrepresentation. Plaintiff's May 6, 2021 Motion to Dismiss Opposition Memo Ex. A Curry Affidavit declared that the"[d]efendants assured [her] that the Bond would be done properly". (ECF 20, Ex A. #6). The Opposition Memo detailed that Defendants "disingenuously based the[ir] Motion to Revoke Bond on 'imperfections in the collateral'…to the Superior Court…to disguise the issue raised in the Casey Letter and acted upon by the Connecticut Department of Insurance." (ECF 20, p. 4)

Similarly, the matrix of facts and intentional conduct outlined in the Original Complaint, Answer, and Counterclaim pleadings already addressed the issues underlying the claims of Breach of Implied Covenant of Good Faith and Fair Dealing and Breach of Implied Contract that were included in Plaintiff's Amended Complaint.

In her Original Complaint, Plaintiff asserted the following pertinent facts: "On or about January 9, 2020, PSC, through its agent, 24/7, posted a bond in the penal sum of $6,000,000.00 to secure the conditional release of the defendant in the matter of State v. Dulos, D.N. CR-20-0241180-T (the 'Bond')". ( ECF 1, p. 3, #10) . "On or around January 9, 2020, Plaintiff paid $147,000.00…to 24/7 as agent for PSC by means of two cashier's checks…" (ECF 1, p.3, #12). "On January 28, 2020, PSC moved to revoke the Bond on the grounds that it had exceeded the limitations of risk set by <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §38a-73."  (ECF 1, p. 3, #13). "The Bond was void ab initio by virtue of the fact that PSC acknowledged that it had violated <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §38a-73." (ECF 1, p. 3, #14). "Defendants have provided no benefit to Plaintiff." (ECF 1, p. 3, #15). "Plaintiff has demanded the return of her money". (ECF 1, p. 3, #16).  "Despite demand, Defendants have retained Plaintiff's" money. (ECF 1, p. 3, #17).

These facts placed Defendants on notice they were unjustly enriched because she paid them for a bail bond, the purpose of which is to ensure a bond defendant's release from custody *throughout the duration of his trial*.  Defendants acknowledged that they could not legally provide such a bond, but nevertheless illicitly retained Plaintiff's money for a bond they could not provide. These allegations encompass the same nature and "general area of dispute" as a Breach of Implied Contract claim and Breach of Implied Covenant of Good Faith and Fair Dealing.  See *Rosen v. Dick,* 639 F.2d at 96 (2d. Cir. 1980) *("although the plaintiff's contract*

claims were not expressly conveyed by his constitutional claims, the court found them implicit in the original complaint and therefore inadequate to support a new jury demand".)

Furthermore, the Defendants themselves raised these issues directly in their January 10, 2022 Answer/Counterclaim to Plaintiff's Original Complaint when they brought causes of action against Plaintiff including Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (ECF 52). Defendants did not file a jury claim at that time. Plaintiff filed her Answer to Defendants' Counterclaims on January 25, 2022 asserting affirmative defenses including, in part, that Defendants' claims were "barred on account of their prior breach of any putative agreement with Plaintiff" and stating, "[a]s Detailed in Plaintiff's February 23, 2021 complaint, Defendants' claim is barred by the operation of the doctrine of unclean hands." (ECF 53). Defendants also did not demand a jury in response to Plaintiff's Counterclaim Answer. No new issues were raised with the addition of these claims to Plaintiff's Amended Complaint. The Defendants initial jury waiver for these issues should still apply.

Defendants' jury demand on Plaintiff's claim of Civil Forgery should also be denied as this issue was also raised well before Plaintiff's Amended Complaint was filed on March 6, 2023. Defendants were put on notice by Plaintiff on May 6, 2021, in her Memorandum in Opposition to Defendants' Motion to Dismiss that Plaintiff did not execute Exhibit D to Defendants' Memorandum, the "Unpaid Premium Agreement". (ECF 20, p.3, footnote 1). Plaintiff's May 6, 2021 Affidavit further detailed that she "did not execute the January 9, 2020 'Unpaid Premium Agreement' which appears as Exhibit D to Defendants' Memorandum nor…ever execute[d] any document similarly entitled 'Unpaid Premium Agreement.'" (ECF 20, Ex A. Curry Affidavit, #8)

During depositions of two Defendants held by Plaintiff in November 2021, the Defendants were questioned about the purported signing of the Unpaid Premium Plan document. Defendants submitted in their January 10, 2022, Answer an affirmative defense that Plaintiff signed the Unpaid Premium Agreement, while knowing that Plaintiff's sworn testimony in her Affidavit was that Plaintiff did not sign any such form.  (ECF 52, pp. 5-6). Additionally, Defendants based their Counterclaims of Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment on the allegation that Plaintiff signed the Unpaid Premium Agreement.  Defendants did not request a jury when submitting their Answer and Counterclaim against Plaintiff.  Defendants, however, proceeded to obtain and disclose to the Court docket during discovery their expert witness materials on this matter in March 2022. Plaintiff's allegations that this document was forged was not a new issue and should be covered by the Defendants' jury waiver for the original pleadings.

Notably, across all the pleadings, the evidence required for Defendants to defend themselves remained the same because Defendants submitted no new discovery requests after Plaintiff's Amended Complaint was presented on March 6, 2023.  Plaintiff also did not submit any new discovery requests after filing the Amended Complaint.

Finally, the legal principles established by *Rosen* defining what constitutes a "new issue" that will revive a jury claim continue to be upheld.   In 2007 the Court held in *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 356 (2d Cir. 2007):

> [a] litigant who has waived a jury may nonetheless demand one with respect to new issues raised by later pleadings, unless the new issues are simply 'artful rephrasings' of existing issues. *See* <u>Rosen v. Dick</u>, 639 F.2d 82,94 (2d Cir. 1980).  When the same parties are the litigants before and after an amended pleading, we are unlikely to find a new issue has been raised. *Id.* at 96. An amended complaint asserting new theories of recovery, based on the same facts as the original complaint, will not renew a defendant's right to a jury trial when that right was waived with respect to the original complaint. 8 James Wm. Moore, *Moore's Federal Practice* § 38.50[8][d] (3d ed.2006).

*Id*.

In conclusion, the basic legal theory and all issues relating to the general area of dispute of Curry's complaint have remained the same throughout the pendency of this litigation: the Defendants' violation of Connecticut insurance law CGS 38a-73a and their deliberate acts violating that law to illicitly obtain and withhold Plaintiff's money.  In accordance with the legal parameters established by *Lanza* and *Rosen*, no new issues were brought forward by the individual claims in the Amended Complaint that would revive the Defendants' jury waiver. Therefore, Defendant's prior jury waiver applies to the claims of Plaintiff's Amended Complaint. Plaintiff's Motion to Strike should be granted in full.

**b.        Plaintiff will be prejudiced by Defendants' Untimely Jury Demand**

Plaintiff will be significantly prejudiced by the Defendants' late jury demand.  Plaintiff determined her litigation strategy based on the assumption that the trial would be a bench trial after Defendant's waived their jury claim in early 2022.  As a result, Plaintiff was careful to avoid raising "new issues" in the Amended Complaint that would revive a previously waived jury demand.

To begin, Fed.R.Civ.P. 38(b) "embodies the equitable principles of reasonable reliance . . . and adequate notice . . .," *Rosen v. Dick*, 639 F.2d at 94 (2d Cir. 1980), and thereby ensures that the parties and the court know *early on in* the litigation who the factfinder will be. *See Berisford Capital Corp. v. Syncom Corp.,* 650 F. Supp. 999, 1001 (S.D.N.Y. 1987).The Second Circuit has held that Rule 38(b) has dual purposes -- to provide the party seeking to invoke the jury trial right with reasonable reliance and to provide the other parties in the action with adequate notice -

- and that the court enforcing the Rule must "satisfy justifiable expectations while avoiding undue surprise." *Rosen v. Dick*, 639 F.2d at 87-88 (2d Cir. 1980).

Plaintiff was not made aware of Defendants' untimely jury demand until after nearly two (2) years of discovery had concluded and the Scheduling Order discovery deadline had passed. Plaintiff, therefore, was given no opportunity to develop litigation strategy to prepare for a jury trial. Here, the element of "undue surprise" is particularly prejudicial to Plaintiff given the matter at hand. It is inevitable that Plaintiff will not receive an impartial jury trial once jurors discover the name of this Bond defendant and the unavoidable local and national media that surrounds this Bond defendant. Plaintiff was given no opportunity to execute upon all possible strategies to offset this inevitability of an impartial jury trial, including, but not limited to, the chance to carefully consider expert witness strategy.

Further, the parties jointly agreed in the filing of the new 26(f) report on February 6, 2023 that discovery and all depositions would conclude on April 6, 2023. (ECF 105). Notably, the Defendants did not object to the Plaintiff's Amended Complaint filed on March 6, 2023 and did not conduct any additional discovery after March 6, 2023. Knowing discovery had concluded, Defendants filed their late jury demand on April 21, 2023 (waiting even to file outside of the permissible pleadings window pursuant to Federal Rules of Civil Procedure Rule 12).

Based on Defendants' jury waiver, the scope and extent of discovery included the exchange of numerous emails and internal memorandum; multiple depositions of the parties and employees involved; purported contracts and agreements; the subpoenaing of third-party records; and an expert witness strategy tailored to the issues being tried to the Court. Had Defendants' disclosed their jury demand when they filed their Answer and Counterclaims on January 10,

2022, Plaintiff would have been on notice of the jury demand and tailored her discovery and litigation strategy as if she were presenting her case to a jury, not to the Court.

Plaintiff should have had the benefit of knowing "early on in the litigation" who the factfinder would be. Because Plaintiff failed to receive the benefit of knowing early on in the litigation that the case would be tried to a jury, equity demands the granting of Plaintiff's Motion to Strike Defendants' Jury Claim in full.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant her Motion to Strike Defendants' late jury demand in its entirety.

ANNA K. CURRY

By:_____/s/_____
Nicholas J. Adamucci, Esq.
Fed. Bar No. CT27299
Adamucci, LLC.
67 Holly Hill Lane
Suite 308A
Greenwich, CT 06830
Tel. (203) 485-9707
Fax. (203) 724-2027
Email: nicholas@adamucci.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May 2024, a copy of the foregoing was filed electronically via operation of the Court's CM/ECF Electronic Filing System. A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice. Parties may access this filing through the Court's CM/ECF System.

By: __/s/_____
Nicholas J. Adamucci, Esq (ct27299)